IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.  11-68463 – MHM |
| LEE'S FAMOUS RECIPES, INC. ) | |
| ) | CHAPTER 11 |
| Debtor. ) | |

**MOTION FOR AUTHORITY TO USE CASH COLLATERAL
AND REQUEST FOR EMERGENCY HEARING**

Pursuant to 11 U.S.C. § 363 and Bankruptcy Rule 4001, Lee's Famous Recipes, Inc., debtor-in-possession (the "**Debtor**"), requests that the Court enter an order authorizing the Debtor's use of cash collateral.  The Debtor shows the Court as follows.

**Background**

1.

On June 24, 2010 (the "**Petition Date**"),  the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy  Code and has continued in possession of its property and management of its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.

Additional information about Debtor's business and the events leading up to the Petition Date can be found in the Declaration of Charles L. Cooper, Jr. in Support of First Day Motions (the "**Cooper Declaration**") which is incorporated herein by reference.

**The Debtor's Assets**

3.

Among the Debtor's assets are seven parcels of real property (the "**Property"**) having a collective recent appraised value of approximately $2.2 million.

4.

The Debtor is also the owner and holder of numerous notes with its various licensees (the "**Licensee Notes**") having a collective principal balance of approximately $3.488 million. The Debtor receives approximately $100,000 per month in payments on the Licensee Notes.

5.

In addition, the Debtor owns other valuable assets, including intellectual property, royalties, and franchise rights related to the Lee's Famous Recipes brand and its operations.

**Creditors Who Might Assert an Interest in Cash Collateral**

6.

Coastal Bank and Trust, a division of Synovus Bank ("**Coastal**") may assert a first priority security interests in the Property and/or the Licensee Notes to secure the Debtor's obligations under two promissory notes have a collective current balance of approximately $1.7 million.

7.

John Tsern, an individual and former principal of the Debtor, may assert a security interest in the Licensee Notes to secure payment on a certain guarantee by the Debtor of an obligation of an affiliate of the Debtor in the principal amount of $400,000.

8.

Sysco Atlanta LLC and certain related entities might assert a security interest in some or all of assets of the Debtor to secure certain unspecified obligations in an unliquidated amount.

9.

In addition, one or more judgment creditors of the Debtor might asserts liens against some or all of the Debtor's assets that might arise under applicable state law. In particular,

Brauvin Net Capital LLC appears to assert a judgment lien against certain assets of the Debtor in respect of one or more judgments obtained against the Debtor in the aggregate amount of up to approximately $270,000.

**Relief Requested**

10.

The payment obligations to the Debtor under the Licensee Notes, as well as certain other income of the Debtor might constitute "cash collateral," as defined in section 363(a) of the Bankruptcy Code, of one or more of the creditors identified above. The Debtor's use of the cash collateral is essential to the continuing operation of its business, to maintain the value of the Property and for an effective reorganization.

11.

The Debtor believes that certain of the liens asserted by the creditors referenced above will be avoided as preferences, fraudulent transfers, and other voidable transfers pursuant to adversary proceedings that the Debtor will be commencing shortly. In addition, the Debtor is confident that any remaining lien creditors will be substantially "over-secured" by virtue of the value of the Notes, the Property and other assets of the Debtor.

12.

Nevertheless, the Debtor is willing to provide adequate protection for the use of cash collateral as follows:

(a)   To the extent any of the above-referenced creditors have valid, properly perfected security interests in the Property, Licensee Notes or other assets of the Debtor, such creditors shall retain their liens in such assets in the same order of priority as existed on the Petition Date.

(b)     In addition, such creditors shall be given replacement liens in any proceeds derived from such creditors' collateral the same order of priority as existed on the Petition Date.;

(c)     The Debtor will only use cash collateral for items set forth in a budget to be approved by the Court, subject to a variance of up to 15% per line item, plus any quarterly fees owed to the U.S. Trustee.  A copy of a proposed budget is attached hereto as Exhibit "A"; and

(d)     A proposed Interim Order granting this Motion is attached hereto as Exhibit "B".

WHEREFORE, the Debtor requests that this Court: (a) schedule an emergency hearing on this Motion to be heard as soon as possible, but in no event later than the close of business on Wednesday, June 29, 2011; (b) enter an order granting this Motion at the conclusion of such hearing; and (c) grant the Debtor such other and further relief as is just and proper.

This 27th day of June, 2011.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

/s/

| | |
|---|---|
| 1500 Candler Building | J. ROBERT WILLIAMSON |
| 127 Peachtree Street, NE | Georgia Bar No. 765214 |
| Atlanta, GA 30303 | J. HAYDEN KEPNER, JR. |
| (404) 893-3880 (phone) | Georgia Bar No. 416616 |
| (404) 893-3886 (fax) | ASHLEY REYNOLDS RAY |
| rwilliamson@swlawfirm.com | Georgia Bar No. 601559 |
| hkepner@swlawfirm.com | Counsel for the Debtor |
| aray@swlawfirm.com | |

- 4 -

**EXHIBIT "A"**

| Lee's Famous Recipes, Inc | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Weekly Cash Budget Week ending 7/1/11 through Week ending 01/06/2012 | | | | | | | | | | |
| 27 weeks (7 four week periods) | | | | | | | | | | |
| Week Ending | 7/1/11 | 7/8/11 | 7/15/11 | 7/22/11 | 7/29/11 | 8/5/11 | 8/12/11 | 8/19/11 | 8/26/11 | 9/2/11 |
| **BEGINNING CASH** | **54,200** | **74,359** | **145,304** | **158,178** | **253,953** | **261,777** | **256,522** | **244,346** | **309,871** | **299,095** |
| **SOURCES OF CASH:** | | | | | | | | | | |
| Franchise Royalties | - | - | 25,000 | 7,000 | - | - | 25,000 | 7,000 | - | - |
| Notes Payable - Licensees | 20,000 | 7,500 | | 75,000 | 20,000 | 7,500 | | 75,000 | 20,000 | 7,500 |
| Spice/Product Gross Income | 32,000 | 60,000 | 30,000 | 65,025 | 35,000 | 35,000 | 35,000 | 46,025 | 35,000 | 35,000 |
| Equipment | | 15,000 | | | | | | | | |
| Notes Payable - Other | | | | | | | | | | |
| Arun | | 300 | | | | 300 | | | | 300 |
| Hodge | | 600 | | | | 600 | | | | 600 |
| Adsit | | 295 | | | | 295 | | | | 295 |
| Annual Conference Registration | 25,000 | 5,000 | 5,000 | 10,000 | 18,000 | | | | | |
| Admin. Reimbursement | | 8,300 | | | | 8,300 | | | | 8,300 |
| **TOTAL SOURCES OF CASH** | **77,000** | **96,995** | **60,000** | **157,025** | **73,000** | **51,995** | **60,000** | **128,025** | **55,000** | **51,995** |
| **TOTAL SOURCES OF CASH** | **77,000** | **96,995** | **60,000** | **157,025** | **73,000** | **51,995** | **60,000** | **128,025** | **55,000** | **51,995** |
| **USES OF CASH:** | | | | | | | | | | |
| **COST OF GOODS SOLD:** | | | | | | | | | | |
| Proprietary Spice and Product Costs | - | - | - | - | 23,500 | 23,500 | 23,500 | 23,500 | 26,500 | 26,500 |
| **TOTAL COST OF GOODS SOLD:** | - | - | - | - | 23,500 | 23,500 | 23,500 | 23,500 | 26,500 | 26,500 |
| **OPERATING EXPENSES:** | | | | | | | | | | |
| **SALARIES & PAYROLL** | | | | | | | | | | |
| Officers Net Salaries ($14,769 Gross bi-weekly) | 13,935 | | 13,935 | | 13,935 | | 13,935 | | 13,935 | |
| Office and Field Salaries | 17,091 | | 17,091 | | 17,091 | | 17,091 | | 17,091 | |
| Payroll Taxes | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 |
| SUTA/FUTA | - | - | - | | 3,800 | - | | | - | |
| Ohio WC | | | | | 600 | | | | - | |
| **Total Salary Expenses** | **31,026** | **8,000** | **31,026** | **8,000** | **35,426** | **8,000** | **31,026** | **8,000** | **31,026** | **8,000** |
| **Corporate Office - RENT EXPENSE** | 1,650 | | | | | 1,650 | | | | 1,650 |
| **UTILITIES** | | | | | | | | | | |
| Telephone / Internet | | 800 | | | | | 800 | | | |
| Cell Phones | | | 400 | | | | | 400 | | |
| Quarterly Utility Adjustment | | | 600 | | | | | | | |
| **Total Utilities** | - | 800 | 1,000 | - | - | - | 800 | 400 | - | - |
| **INSURANCE & TAXES** | | | | | | | | | | |
| General | | | | 15,000 | | | 600 | | | |
| Group Medical | 8,000 | | | | | 8,000 | | | | 8,000 |
| Personal Property Taxes ($1,000 due 3/2012) | - | | | | | | | | | |
| Real Property Taxes | - | | | | | | | | | |
| **Total Insurance & Taxes** | **8,000** | **-** | **-** | **15,000** | **-** | **8,000** | **600** | **-** | **-** | **8,000** |
| **PROFESSIONAL FEES** | | | | | | | | | | |
| IT Support Fees | | | | 2,000 | | | | | 2,000 | |
| Debtor Professional Legal Services | | | | 20,000 | | - | | 20,000 | | - |
| Professional Services ISS - Payroll/AP | 315 | - | - | | 500 | | | - | 500 | |
| **Total Professional Services** | **315** | **-** | **-** | **22,000** | **500** | **-** | **-** | **20,000** | **2,500** | **-** |
| **OTHER OPERATING EXPENSES** | | | | | | | | | | |
| Copier Lease | 700 | | | | | 700 | | | | 700 |
| Field Travel Expense | 6,850 | 5,250 | 5,250 | 5,250 | 5,250 | 6,850 | 5,250 | 5,250 | 5,250 | 6,850 |
| Misc. Expenses | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Bank Service Charge | 150 | | | | | 400 | | | | 400 |
| Equipment Lease | | | 4,250 | | | | | 4,250 | | |
| Computer Maintenance Expenses | 150 | | | | | 150 | | | | 150 |
| Storage Unit | | 500 | 100 | | | | 500 | 100 | | |
| Store & Office Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Annual Conference Expenses | 7,500 | 11,000 | 5,000 | | | 7,500 | 10,000 | | | |
| Franchisee and Licensee Training Costs | | | | 10,000 | - | | | | | |
| Postage & Express Mailing | | | | 500 | | | | | 500 | |
| **Total Other Operating Expenses** | **15,850** | **17,250** | **15,100** | **16,250** | **5,750** | **16,100** | **16,250** | **10,600** | **5,750** | **8,600** |
| **TOTAL COS & OPERATING EXPENSES** | **56,841** | **26,050** | **47,126** | **61,250** | **65,176** | **57,250** | **72,176** | **62,500** | **65,776** | **52,750** |
| **CASH FLOW FROM OPERATIONS** | **20,159** | **70,945** | **12,874** | **95,775** | **7,824** | **(5,255)** | **(12,176)** | **65,525** | **(10,776)** | **(755)** |
| **ENDING CASH** | **74,359** | **145,304** | **158,178** | **253,953** | **261,777** | **256,522** | **244,346** | **309,871** | **299,095** | **298,340** |

| Lee's Famous Recipes, Inc | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Weekly Cash Budget Week ending 7/1/11 through Week ending | | | | | | | | | | |
| 27 weeks (7 four week periods) | | | | | | | | | | |
| Week Ending | **9/9/11** | **9/16/11** | **9/23/11** | **9/30/11** | **10/7/11** | **10/14/11** | **10/21/11** | **10/28/11** | **11/4/11** | **11/11/11** |
| **BEGINNING CASH** | **298,340** | **293,764** | **340,764** | **354,513** | **356,763** | **350,482** | **421,532** | **417,331** | **419,581** | **413,300** |
| **SOURCES OF CASH:** | | | | | | | | | | |
| Franchise Royalties | 25,000 | 7,000 | - | | 25,000 | 7,000 | - | - | 25,000 | 7,000 |
| Notes Payable - Licensees | | 75,000 | 20,000 | 7,500 | | 75,000 | 20,000 | 7,500 | - | 75,000 |
| Spice/Product Gross Income | 35,000 | 35,000 | 60,025 | 35,000 | 35,000 | 35,000 | 67,425 | 35,000 | 35,000 | 35,000 |
| Equipment | | | | | | | | | | |
| Notes Payable - Other | | | | | | | | | | |
| Arun | | | | | 300 | - | | | 300 | |
| Hodge | | | | | 600 | - | | | 600 | |
| Adsit | | | | | 295 | - | | | 295 | |
| Annual Conference Registration | | | | | | - | | | | |
| Admin. Reimbursement | | | | - | 8,300 | - | | | 8,300 | |
| **TOTAL SOURCES OF CASH** | **60,000** | **117,000** | **80,025** | **42,500** | **69,495** | **117,000** | **87,425** | **42,500** | **69,495** | **117,000** |
| **TOTAL SOURCES OF CASH** | **60,000** | **117,000** | **80,025** | **42,500** | **69,495** | **117,000** | **87,425** | **42,500** | **69,495** | **117,000** |
| **USES OF CASH:** | | | | | | | | | | |
| **COST OF GOODS SOLD:** | | | | | | | | | | |
| Proprietary Spice and Product Costs | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 |
| **TOTAL COST OF GOODS SOLD:** | **26,500** | **26,500** | **26,500** | **26,500** | **26,500** | **26,500** | **26,500** | **26,500** | **26,500** | **26,500** |
| **OPERATING EXPENSES:** | | | | | | | | | | |
| **SALARIES & PAYROLL** | | | | | | | | | | |
| Officers Net Salaries ($14,769 Gross bi-weekly) | 13,935 | | 13,935 | | 13,935 | | 13,935 | | 13,935 | |
| Office and Field Salaries | 17,091 | | 17,091 | | 17,091 | | 17,091 | | 17,091 | |
| Payroll Taxes | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 |
| SUTA/FUTA | - | | - | - | | 3,800 | | | | |
| Ohio WC | | | | - | | 600 | | | | |
| **Total Salary Expenses** | **31,026** | **8,000** | **31,026** | **8,000** | **31,026** | **12,400** | **31,026** | **8,000** | **31,026** | **8,000** |
| **Corporate Office - RENT EXPENSE** | | | | | 1,650 | | | | 1,650 | |
| **UTILITIES** | | | | | | | | | | |
| Telephone / Internet | 800 | | | | | 800 | | | | 800 |
| Cell Phones | | 400 | | | | | 400 | | | |
| Quarterly Utility Adjustment | | | | | | | 600 | | | |
| **Total Utilities** | **800** | **400** | **-** | **-** | **-** | **800** | **1,000** | **-** | **-** | **800** |
| **INSURANCE & TAXES** | | | | | | | | | | |
| General | | | | | | | | | | |
| Group Medical | | | | | 8,000 | | | | 8,000 | |
| Personal Property Taxes ($1,000 due 3/2012) | | | | | | | | | | |
| Real Property Taxes | | | | | | | | | | |
| **Total Insurance & Taxes** | **-** | **-** | **-** | **-** | **8,000** | **-** | **-** | **-** | **8,000** | **-** |
| **PROFESSIONAL FEES** | | | | | | | | | | |
| IT Support Fees | | | 2,000 | | | | 2,000 | | | |
| Debtor Professional Legal Services | | 20,000 | | | - | | 20,000 | | - | |
| Professional Services ISS - Payroll/AP | | - | 500 | | | | 500 | | | |
| **Total Professional Services** | **-** | **20,000** | **2,500** | **-** | **-** | **-** | **22,500** | **-** | **-** | **-** |
| **OTHER OPERATING EXPENSES** | | | | | | | | | | |
| Copier Lease | | | | | 700 | | | | 700 | |
| Field Travel Expense | 5,250 | 5,250 | 5,250 | 5,250 | 6,850 | 5,250 | 5,250 | 5,250 | 6,850 | 5,250 |
| Misc. Expenses | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Bank Service Charge | | | | | 400 | | | | 400 | |
| Equipment Lease | | 4,250 | | | | | 4,250 | | | |
| Computer Maintenance Expenses | | | | | 150 | | | | 150 | |
| Storage Unit | 500 | 100 | | | | 500 | 100 | | | 500 |
| Store & Office Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Annual Conference Expenses | | | | | | | | | | |
| Franchisee and Licensee Training Costs | | 5,000 | | | | | | | | |
| Postage & Express Mailing | | | 500 | | | | 500 | | | |
| **Total Other Operating Expenses** | **6,250** | **15,100** | **6,250** | **5,750** | **8,600** | **6,250** | **10,600** | **5,750** | **8,600** | **6,250** |
| **TOTAL COS & OPERATING EXPENSES** | **64,576** | **70,000** | **66,276** | **40,250** | **75,776** | **45,950** | **91,626** | **40,250** | **75,776** | **41,550** |
| **CASH FLOW FROM OPERATIONS** | **(4,576)** | **47,000** | **13,749** | **2,250** | **(6,281)** | **71,050** | **(4,201)** | **2,250** | **(6,281)** | **75,450** |
| **ENDING CASH** | **293,764** | **340,764** | **354,513** | **356,763** | **350,482** | **421,532** | **417,331** | **419,581** | **413,300** | **488,750** |

**Lee's Famous Recipes, Inc**
Weekly Cash Budget  Week ending 7/1/11 through Week ending
27 weeks (7 four week periods)

| Week Ending | 11/18/11 | 11/25/11 | 12/2/11 | 12/9/11 | 12/16/11 | 12/23/11 | 12/30/11 | 1/6/12 | |
|---|---|---|---|---|---|---|---|---|---|
| **BEGINNING CASH** | 488,750 | 466,249 | 456,499 | 380,218 | 455,668 | 417,142 | 440,917 | 437,641 | |
| | | | | | | | | | |
| **SOURCES OF CASH:** | | | | | | | | | |
| Franchise Royalties | - | - | 25,000 | 7,000 | - | - | 25,000 | 7,000 | 224,000 |
| Notes Payable - Licensees | 20,000 | 7,500 | - | 75,000 | 20,000 | 7,500 | - | 75,000 | 717,500 |
| Spice/Product Gross Income | 46,025 | 35,000 | 35,000 | 35,000 | 35,000 | 59,025 | 35,000 | 35,000 | 1,130,550 |
| Equipment | | | | | | | | | 15,000 |
| Notes Payable - Other | | | | | | | | 300 | 300 |
|   Arun | | | 300 | | | | | 600 | 2,400 |
|   Hodge | | | 600 | | | | | 295 | 3,895 |
|   Adsit | | | 295 | | | | | | 1,770 |
| Annual Conference Registration | | | | | | | | - | 63,000 |
| Admin. Reimbursement | | | 8,300 | | | | | 8,300 | 58,100 |
| **TOTAL SOURCES OF CASH** | 66,025 | 42,500 | 69,495 | 117,000 | 55,000 | 66,525 | 60,000 | 126,495 | 2,216,515 |
| | | | | | | | | | |
| **TOTAL SOURCES OF CASH** | 66,025 | 42,500 | 69,495 | 117,000 | 55,000 | 66,525 | 60,000 | 126,495 | 2,216,515 |
| | | | | | | | | | |
| **USES OF CASH:** | | | | | | | | | |
| | | | | | | | | | |
| **COST OF GOODS SOLD:** | | | | | | | | | |
| Proprietary Spice and Product Costs | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 624,000 |
| **TOTAL COST OF GOODS SOLD:** | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 624,000 |
| | | | | | | | | | |
| **OPERATING EXPENSES:** | | | | | | | | | |
| | | | | | | | | | |
| **SALARIES & PAYROLL** | | | | | | | | | |
| Officers Net Salaries ($14,769 Gross bi-weekly) | 13,935 | | 13,935 | | 13,935 | | 13,935 | | 195,090 |
| Office and Field Salaries | 17,091 | | 17,091 | | 17,091 | | 17,091 | | 239,274 |
| Payroll Taxes | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 | 112,000 |
| SUTA/FUTA | | | | | | | | 3,800 | 11,400 |
| Ohio WC | | | | | | | | 600 | 1,800 |
| **Total Salary Expenses** | 31,026 | 8,000 | 31,026 | 8,000 | 31,026 | 8,000 | 31,026 | 12,400 | 559,564 |
| | | | | | | | | | |
| **Corporate Office - RENT EXPENSE** | | | 1,650 | | | | | 1,650 | 11,550 |
| | | | | | | | | | |
| **UTILITIES** | | | | | | | | | |
| Telephone / Internet | | | | 800 | | | | | 4,800 |
| Cell Phones | 400 | | | | 400 | | | | 2,400 |
| Quarterly Utility Adjustment | | | | | | | | 600 | 1,800 |
| | | | | | | | | | - |
| **Total Utilities** | 400 | - | - | 800 | 400 | - | - | 600 | 9,000 |
| | | | | | | | | | |
| **INSURANCE & TAXES** | | | | | | | | | |
| General | | | | | | | | | 15,600 |
| Group Medical | | | 8,000 | | | | | 8,000 | 56,000 |
| Personal Property Taxes  ($1,000 due 3/2012) | | | | | | | | | - |
| Real Property Taxes | | | 70,000 | | | | | | 70,000 |
| **Total Insurance & Taxes** | - | - | 78,000 | - | - | - | - | 8,000 | 141,600 |
| | | | | | | | | | |
| **PROFESSIONAL FEES** | | | | | | | | | |
| IT Support Fees | | 2,000 | | | | 2,000 | | | 12,000 |
| Debtor Professional Legal Services | 20,000 | | - | | 20,000 | | | - | 120,000 |
| Professional Services  ISS - Payroll/AP | 500 | | | | 500 | | | | 3,315 |
| **Total Professional Services** | 20,500 | 2,000 | - | - | 20,500 | 2,000 | - | - | 135,315 |
| | | | | | | | | | |
| **OTHER OPERATING EXPENSES** | | | | | | | | | |
| Copier Lease | | | 700 | | | | | 700 | 4,900 |
| Field Travel Expense | 5,250 | 5,250 | 6,850 | 5,250 | 5,250 | 5,250 | 5,250 | 6,850 | 158,200 |
| Misc. Expenses | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 11,200 |
| Bank Service Charge | | | 400 | | | | | 400 | 2,550 |
| Equipment Lease | 4,250 | | | | 4,250 | | | | 25,500 |
| Computer Maintenance Expenses | | | 150 | | | | | 150 | 1,050 |
| Storage Unit | 100 | | | 500 | 100 | | | | 3,600 |
| Store & Office Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 2,800 |
| Annual Conference Expenses | | | | | | | | | 41,000 |
| Franchisee and Licensee Training Costs | | 9,500 | | | 5,000 | | | | 29,500 |
| Postage & Express Mailing | | 500 | | | | 500 | | | 3,000 |
| **Total Other Operating Expenses** | 10,100 | 15,750 | 8,600 | 6,250 | 15,100 | 6,250 | 5,750 | 8,600 | 283,300 |
| | | | | | | | | | |
| **TOTAL COS & OPERATING EXPENSES** | 88,526 | 52,250 | 145,776 | 41,550 | 93,526 | 42,750 | 63,276 | 57,750 | 1,764,329 |
| | | | | | | | | | |
| **CASH FLOW FROM OPERATIONS** | (22,501) | (9,750) | (76,281) | 75,450 | (38,526) | 23,775 | (3,276) | 68,745 | 452,186 |
| | | | | | | | | | |
| **ENDING CASH** | 466,249 | 456,499 | 380,218 | 455,668 | 417,142 | 440,917 | 437,641 | 506,386 | 506,386 |

EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 11-68463-MHM |
| LEE'S FAMOUS RECIPES, INC., | ) | |
| | ) | CHAPTER 11 |
| Debtor. | ) | |

PROPOSED
INTERIM ORDER GRANTING MOTION FOR
AUTHORITY TO USE CASH COLLATERAL

THIS CAUSE came before the Court at a preliminary hearing at ___ p.m. on June ___, 2011 (the "**Preliminary Hearing**"), to consider the Motion for Authority To Use Cash Collateral And Request For Emergency Hearing, [Docket No. ___] (the "**Motion**") filed on June 27, 2011, by Lee's Famous Recipes, Inc., (the "**Debtor**").  Upon consideration of the Motion, and for cause shown, the Court hereby finds as follows:

A. On June 24, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in this Court and continues to operate its business and manage its property as debtor-in-possession.

B. The Debtor is the franchisor and licensor of approximately 150 fast food chicken restaurants in the United States and various foreign countries that operate und the name of Mrs. Winners.  The Debtor owns the intellectual property and business enterprise related to the brand "Lee's Famous Recipe Chicken".  The Debtor franchises and/or

licenses rights to individuals or entities that operate approximately 150 Lee Famous Recipe Chicken restaurants in the United States, Canada and Jordan.

C. Among the Debtor's assets are seven parcels of real property (the "**Property**") having a collective recent appraised value of approximately $2.2 million.

D. The Debtor is also the owner and holder of numerous notes with its various licensees (the "**Licensee Notes**") having a collective principal balance of approximately $3.488 million. The Debtor receives approximately $100,000 per month in payments on the Licensee Notes.

E. In addition, the Debtor owns other valuable assets, including intellectual property, royalties, and franchise rights related to the Lee's Famous Recipes brand and its operations.

F. Coastal Bank and Trust, a division of Synovus Bank ("Coastal") may assert a first priority security interests in the Property and/or the Licensee Notes to secure the Debtor's obligations under two promissory notes have a collective current balance of approximately $1.7 million.

G. John Tsern ("Tsern"), an individual and former principal of the Debtor, may assert a security interest in the Licensee Notes to secure payment on a certain guarantee by the Debtor of an obligation of an affiliate of the Debtor in the principal amount of $400,000.

H. Sysco Atlanta LLC and certain related entities (collectively, "Sysco") might assert a security interest in some or all of assets of the Debtor to secure certain obligations in an unliquidated amount.

2

I. In addition, one or more judgment creditors of the Debtor might asserts liens against some or all of the Debtor's assets that might arise under applicable state law. In particular, Brauvin Net Capital LLC ("Brauvin") appears to assert a judgment lien against certain assets of the Debtor in respect of one or more judgments obtained against the Debtor in the aggregate amount of up to approximately $270,000. Coastal, Tsern, Sysco and Brauvin are referred to below as the "Lienholders," without prejudice to the right of the Debtor or any other party in interest to contest the extent, validity or priority of any lien asserted by any of the Lienholders.

J. Payments received by the Debtor on the Licensee Notes and proceeds from other assets of the Debtor might constitute cash collateral (the "Cash Collateral") of one or more of the Lienholders. Debtor requires the immediate use of Cash Collateral to operate its business and maximize its prospects for a successful reorganization.

K. Debtor asserts that it is in the best interest of its estate and its creditors that the Debtor be permitted to use Cash Collateral in the manner provided for herein.

L. Unless the Debtor is authorized to use Cash Collateral as provided in this Order pending a final hearing on the Motion, the Debtor and its estate will suffer immediate and irreparable harm. Notice of this Motion and the Preliminary Hearing has been provided to necessary parties in compliance with Bankruptcy Rule 4001(b)(3).

Based upon the foregoing, IT IS HEREBY ORDERED, as follows:

1. **Usage Period**.  Subject to the terms and conditions contained herein, the Debtor is authorized to use Cash Collateral through the earlier of (i) July 31, 2011, (ii) the date the Debtor's right to use Cash Collateral terminates in accordance with paragraph 10 below (the "**Termination Date**"), or (iii) the entry of a final order authorizing the use of Cash Collateral (the "**Usage Period**").

2. **Projected Use of Cash**.  Unless otherwise authorized by the Court, the amount of Cash Collateral which the Debtor may use during the Usage Period shall not exceed in aggregate 115% of each line item set forth in the budget attached hereto as Exhibit "A" (the "**Budget**"); provided, however, that in addition to items set forth in the Budget, the Debtor shall be permitted to pay the actual expenses incurred for utility deposits and U. S. Trustee quarterly fees.  In the event the Usage Period terminates in the middle of a week, the amount budgeted for that week shall be prorated accordingly.

3. **Authorized Disbursements**.  Debtor shall only be authorized to use Cash Collateral for the actual and necessary expenses of operating the Debtor's business pursuant to the Budget, as set forth above.

4. **Lien on Post-Petition Collateral**.  Pursuant to 11 U.S.C. §§ 361 and 363, as adequate protection for its interest in the Cash Collateral, to the extent Debtor uses Cash Collateral, the Lienholders are granted security interests in and lien upon any proceeds from the lienholders' pre-petition collateral of the same type and to the same extent and validity as secured the Debtor's indebtedness to Lienholders prior to the Petition Date (the "**Post-Petition Collateral**") to the extent of any diminution in the value of any liens

4

and security interests of the Lienholders in any property of the Debtor resulting from the imposition of the automatic stay or any use, sale, consumption or other disposition of such property (whether pursuant to this or any other order of the Court or the Bankruptcy Code).  The priority of said security interests in and liens upon the Post-Petition Collateral shall be the same priority as exists in and upon the Debtor's property as of the Petition Date.  The liens and security interests granted by this Order shall, upon entry of this Order, be perfected as of the Petition Date and shall at all times be prior and senior to any and all liens, claims, encumbrances and security interests in the Post-Petition Collateral of third parties and of the Debtor or any successor trustee in this proceeding or in any superseding proceeding under the Bankruptcy Code, without regard to applicable federal, state or local filing and recording statutes, and without further action of any party; provided, however, that the liens granted to the Lienholders hereunder in connection with the use of any of the assets of the Debtor and cash collateral shall be subject and junior to the fees of the Office of the United States Trustee pursuant to 28 U.S.C. §1930.  In the event any of the Lienholders' security interests in or liens upon the Debtor's property is reduced or invalidated by order of this Court, then their security interests in and liens upon the Post-Petition Collateral granted by this Order shall be reduced or invalidated commensurately.  Notwithstanding anything to the contrary herein, security interests in and liens upon the Post-Petition Collateral shall not extend to the proceeds of any avoidance actions received by the Debtor or the estate pursuant to Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code ("**Avoidance Actions**").

5

5. **<u>Deposits of Cash Collateral</u>**.  All Cash Collateral shall be deposited in Debtor's Debtor-in-Possession account(s) to be established in accordance with the U. S. Trustee guidelines.

6. **<u>Accounting</u>**.  Debtor shall at all times (a) sequester, segregate and account for all Cash Collateral that comes into its possession, custody or control, (b) keep and provide upon request records reasonably sufficient for the Lienholders to determine the status of Cash Collateral collections and expenditures, and (c) shall provide to the Lienholders copies of the monthly operating reports filed with this Court and with the Office of the United States Trustee.

7. **<u>Insurance</u>**.  Debtor shall insure its property and the Post-Petition Collateral against all risks to which it is exposed, including loss, damage, fire, theft and all other such risks, in an amount not less than the fair market value of such collateral, with such companies, under such policies and in such form as is appropriate for a business of a type similar to the Debtor using sound business judgment.

8. **<u>Failure of Adequate Protection</u>**.  The terms and conditions of this Order are intended to provide the Lienholders with adequate protection for their interest in property of the Debtor.  Nothing herein shall be construed as an admission by the Lienholders that their interest in property of the Debtor, including Cash Collateral, is adequately protected; nor shall any provision of this Order be construed as an admission by the Debtor that any of the Lienholders have valid or enforceable liens or security interests in any property of

6

the Debtor or that any provision of this Order is necessary to provide adequate protection of any such interests that might exist.

9. **Unauthorized Use of Cash Collateral**.  Should the Debtor use Cash Collateral for any purpose not authorized herein, the security interest and lien of the Lienholderss granted hereunder shall automatically attach to any assets acquired with such Cash Collateral.

10. **Events of Default**.  Each of the following shall constitute an "Event of Default" under this Order:

    (a)    The occurrence of any material breach, default or non-compliance with the terms of this Order;

    (b)    Confirmation of a Plan of Reorganization in this case;

    (c)    Conversion of this Chapter 11 case to Chapter 7; and

    (d)    Appointment of a trustee in this Chapter 11 case.

11. **Termination**.  Upon the occurrence of an Event of Default, any Lienholder may elect to terminate the Debtor's right to use its Cash Collateral hereunder by giving written notice of termination to counsel for the Debtor and filing a copy of such written notice with the Court. Unless otherwise directed by order of this Court, Debtor's right to use Cash Collateral of such lienholder shall terminate on the seventh day following receipt of such written notice.

12. **Effect of Modification, Vacation or Stay**.  If any provision of this Order is hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect

7

the validity or authority of the Debtor's use of Cash Collateral under this Order prior to such time, nor shall it affect the validity, priority or enforceability of the security interests and liens granted to any Lienholder for such use, prior to the effective date of such modification, vacation or stay.

13. **Restriction on Borrowing or Sale**.   Unless otherwise authorized by order of the Court following notice to the Lienholders and such other parties as may be required by the Bankruptcy Code or the Court, Debtor shall not obtain any post-petition financing or sell or lease any of its assets, except in the ordinary course of business.  In no event shall the Debtor be authorized to obtain post-petition financing which is secured by a lien or security interest in the Debtor's property or the Post-Petition Collateral which is senior to that held by the Lienholders.

14. Upon execution of this Order and pursuant to Bankruptcy Rule 4001(d), the Debtor shall serve a copy of this Order by first class mail on all creditors on the List of Twenty Largest Creditors, BB&T, the Office of the United States Trustee,  and all other interested parties requesting notice.  All interested parties are hereby given notice by service of this Order of the effective date of this Order.  Any objection to this Order must be filed with the Court and served on or before _____**, 2011**, upon counsel for the Debtor, J. Hayden Kepner, Jr., Scroggins & Williamson, 1500 Candler Building, 127 Peachtree Street, N.E., Atlanta, Georgia 30303.  A final hearing on the Motion and any timely filed objections to this Order will be held before the Court on the _____

8

**day of June, 2011, at** _____ \_**.m.,** in Courtroom 1204, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia.

       IT IS SO ORDERED this \_\_\_\_\_ day of June, 2011.

                              _____
                              MARGARET H. MURPHY
                              UNITED STATES BANKRUPTCY JUDGE

Prepared and presented by:
SCROGGINS & WILLIAMSON

_____
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
J. HAYDEN KEPNER, JR.
Georgia Bar No. 416616
ASHLEY REYNOLDS RAY
Georgia Bar No. 601559
1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA  30303
T:    404-893-3880
E:    rwilliamson@swlawfirm.com
       hkepner@swlawfirm.com
       aray@swlawfirm.com
Counsel for the Debtor

**<u>Distribution List</u>**

J. Hayden Kepner, Jr.
Scroggins & Williamson
1500 Candler Building
127 Peachtree Street, N.E.
Atlanta, GA 30303


Office of the United States Trustee
362 Richard Russell Federal Building
75 Spring Street, S.W.
Atlanta, Georgia 30303