UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEE'S FAMOUS RECIPES, INC., | ) | Case No. 11-68463-MHM |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DECLARATION OF CHARLES L. COOPER, JR. IN SUPPORT OF
FIRST DAY APPLICATIONS AND MOTIONS**

I, Charles L. Cooper, Jr., declare under penalty of perjury as follows:

1.

I am the President of Lee's Famous Recipes, Inc., ("**Lee's**," "**Debtor**" or the "**Company**"), a corporation duly organized under and existing pursuant to the laws of the State of Florida. In this capacity, I have obtained detailed knowledge of and experience with the business and financial affairs of Lee's.

2.

I am authorized to submit this declaration in support of the Debtor's First Day Motions (as hereinafter defined). Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning Debtor's operations and financial affairs. If I were called upon to testify, I would testify competently to the facts set forth herein.

**Background**

3.

On the date hereof (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Debtor is

authorized to operate its business as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.

Debtor owns the intellectual property and business enterprise related to the brand "Lee's Famous Recipe Chicken," which it acquired from RTM, Inc., restaurant group and related entities in 2003. Debtor franchises and/or licenses such rights to individuals or entities that operate Lee's Famous Recipe Chicken restaurants. Lee's has approximately 80 franchisees or licensees, with approximately 150 restaurants primarily in the Midwest, Southeast, Canada, and Jordan. In addition to franchising and/or licensing rights to the "Lee's Famous Recipe Chicken" brand, Debtor oversees the support, administration, and business of the entire brand. The company focuses on supplying proprietary products to its franchisees and licenses, assists in operational execution, upholds the standards of the brand and oversees the relationships with the many distributors and vendors who provide services to the franchisees and licensees. The company also works closely with the Lee's Advertising Committee to source promotional material and marketing direction for the benefit of the brand and its franchisees and licensees. The company provides all the administrative, operational, purchasing, marketing, and executive support for the Lee's community.

5.

The vast majority of Lee's debt arises by virtue of various guarantees provided to creditors of Famous Recipe Company Operations, LLC ("**FRCO**"), a sister company of Debtor. In November 2010, FRCO filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the US Bankruptcy Court for the Northern District of Georgia, Atlanta Division. Since that time, creditors of FRCO with debt guaranteed by Lee's have begun to

aggressively pursue collection of such guaranties and as a result, Lee's is a party to multiple lawsuits filed in multiple forums, some of which have been reduced to judgments. These various lawsuits have diverted Debtor's time and resources away from the operation of its business to the point where Debtor is unable to support the Lee's brand in the face of these multiple suits. After evaluating alternatives and consulting with its advisors and directors, the Company eventually concluded that in order to preserve its business and protect its creditors, employees and customers, pursuing a reorganization under the protection of Chapter 11 of the Bankruptcy Code was in the best interest of Debtor and its estate.

## **The First Day Motions**

6.

Contemporaneously with the filing of its bankruptcy petition, Debtor filed the motions and applications listed on Exhibit A (collectively, the "**First Day Motions**"). I submit this declaration in support of the First Day Motions. I have reviewed each of the First Day Motions (including the exhibits and schedules attached thereto) and, to the best of my knowledge, I believe that the facts set forth therein are true and correct. Such representation is based upon information and belief, through my review of various materials and other information, and my experience and knowledge of Debtor's operations and financial condition. If called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the First Day Motions.

7.

As a result of my first-hand experience, and through my review of various materials and other information, discussions with other of Debtor's executives, and discussions with outside advisors, I have formed opinions as to: (a) the necessity of obtaining the relief sought in the First

Day Motions; (b) the importance of the relief sought in the First Day Motions for Debtor to continue to operate effectively; and (c) the negative impact upon Debtor of not obtaining the relief sought in the First Day Motions.

8.

As described more fully below, the relief sought in the First Day Motions will minimize the adverse effects of the Chapter 11 case on Debtor and ensure that Debtor's reorganization efforts proceed as efficiently as possible and result in maximum recovery for creditors, and I believe that the relief sought in each of the First Day Motions is necessary to enable Debtor to operate as debtor-in-possession.

### Motion for Entry of Order Authorizing Use of Cash Collateral
### (the "Cash Collateral Motion")

9.

Various creditors of Debtor have valid security interests in certain assets of Debtor. Other creditors assert security interests in Debtor's assets that Debtor disputes. Still other creditors may assert security interests that Debtor believes will be avoided as preferences or fraudulent transfers pursuant to adversary proceedings that Debtor will commence shortly. A more thorough description of the security interests asserted by various creditors of Debtor is contained in the Cash Collateral Motion. Some of the cash generated by Debtor's operations might constitute cash collateral of some these creditors.

10.

Debtor does not have sufficient available sources of working capital to carry on the operation of its business without use of cash collateral. The ability of Debtor to finance its operations, and the availability of sufficient working capital and liquidity through the use of cash collateral, is essential to Debtor's ability to operate its business. In the absence of such use of

cash collateral, the operation of Debtor's business would not be possible and serious and irreparable harm to Debtor and its estate would occur.

11.

Pending the Final Hearing (as defined in the Cash Collateral Motion), Debtor requires immediate use of cash collateral for, among other things, financing its operations and other working capital needs. It is essential that Debtor immediately stabilize its operations and resume paying for ordinary, post-petition operating expenses, as well as the pre-petition expenses approved in the first day orders, to minimize the damage occasioned by its cash flow problems.

12.

Absent immediate use of cash collateral, Debtor will be unable to pay ongoing operational expenses. Consequently, if interim relief is not obtained, Debtor's assets will be immediately and irreparably jeopardized, to the detriment of its estate, its creditors and other parties in interest.

### Motion for Authority to Pay Pre-Petition Wages, Payroll Taxes, Certain Employee Benefits, and Related Expenses and Other Compensation to Employees and Independent Contractors (the "Wages and Benefits Motion")

13.

Debtor employs approximately nine (9) people in its business.

14.

Debtor has incurred certain pre-petition obligations that remain unpaid as of the Petition Date because they accrued, either in whole or in part, prior to the Petition Date. Even though arising prior to the Petition Date, these obligations (collectively, the "**Obligations**") will become due and payable in the ordinary course of Debtor's business on and after the Petition Date.

- 5 -

These obligations can generally be categorized as follows: (i) wages, salaries, and other compensation; (ii) payroll taxes; and (iii) health and welfare benefits.

15.

Pursuant to Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, a debtor's employees' claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within one hundred eighty (180) days before the Petition Date are afforded unsecured priority status to the extent the claims do not exceed $11,725.00.  11 U.S.C. §§ 507(a)(4)–(5).

16.

Any delay in paying the Obligations will adversely impact Debtor's relationship with its employees and will irreparably impair the morale, dedication, confidence, and cooperation of the very people upon whom Debtor relies in order for its business to be successful.  Debtor must have the support of its employees in order for Debtor's reorganization efforts to succeed.  At this early stage, Debtor simply cannot risk the substantial damage to its business that would inevitably result from a decline in its employees' morale attributable to Debtor's failure to pay previously earned wages, salaries, benefits, and other similar items.

17.

Moreover, absent an order granting the relief requested in this Motion, Debtor's employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the employees to meet their own personal financial obligations.  The stability of Debtor will thus be undermined, perhaps irreparably, by the possibility that otherwise loyal employees will seek other employment alternatives.

### Motion for Establishment of Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals (the "Compensation Procedures Motion")

18.

Debtor believes that the relief requested in this Motion will streamline the professional compensation process and enable the Court and all other parties to monitor the professional fees incurred in this case more effectively.

19.

Briefly stated, the requested procedures would permit each Professional to serve on counsel for Debtor, the Office of the United States Trustee, and counsel for any official committee appointed in this case, a statement of fees and expenses incurred by the Professional during the preceding month (a "**Monthly Statement**"). Debtor would be authorized to pay each Professional the fees and expenses requested in the Monthly Statement in the absence of an objection received within ten (10) days after service of the Monthly Statement. All fees and expenses of each Professional, whether or not paid or objected to in connection with a Monthly Statement, would remain subject to review and approval by the Court in connection with interim and final fee applications under Sections 330 and 331 of the Bankruptcy Code.

### Motion of Debtor for Approval of Notice Procedures (the "Notice Procedures Motion")

20.

Hundreds of creditors and parties in interest may be technically entitled to receive notice in this case. To require Debtor to provide notice of all pleadings and other papers filed in this case to these parties in interest would be extremely burdensome and costly to Debtor's estate as a result of the photocopying, postage, and other expenses associated with such large mailings. Accordingly, Debtor believes that the notice procedures requested in the Notice Procedures

Motion are in the best interests of its estate and creditors, and will not prejudice the rights of any party in interest in this case.

### Motion for Additional Time to File Schedules and Statements of Financial Affairs (the "Additional Time Motion")

21.

Debtor believes that it will be unable to compile all the information necessary for the preparation and filing of its schedules and statements of financial affairs within fifteen (15) days after the Petition Date.

22.

To prepare the schedules and statements, Debtor must gather information from books, records, and documents housed at various locations and relating to a multitude of transactions. Debtor began the process of compiling information to prepare its schedules prior to the Petition Date and is currently working diligently to assemble and collect the necessary information. Nevertheless, because the information needed to prepare the schedules is stored at various locations, Debtor will need additional time to complete this process. For these reasons, Debtor believes cause exists to extend the time for filing their schedules and statements of financial affairs. Debtor anticipates that it will need approximately forty-five (45) days from the Petition Date within which to prepare and file its schedules and statements of financial affairs in the appropriate format.

### Motion for Order Shortening Notice and Expediting Hearing on First-Day Motions (the "Expedited Hearing Motion")

23.

The relief requested in the Expedited Hearing Motion is necessary to ensure that there is no interruption in the services being provided by Debtor or damage to Debtor's business or the

value of its assets. To require Debtor to comply with otherwise applicable notice requirements would cause immeasurable harm to Debtor's ability to efficiently and effectively manage its operations, would create disruptions in the timely payment of obligations, and would threaten Debtor's existence in light of its current condition. Accordingly, Debtor believes that the relief requested in the Expedited Hearing Motion is warranted.

## CONCLUSION

24.

Accordingly, for the reasons stated herein and in each of the First Day Motions, I respectfully request that each of the First Day Motions be granted in its entirety, together with such further relief as the Court deems just and proper.

*Signature on Following Page*

This _____ day of June, 2011.

                                                                             _____
                                                                             Charles L. Cooper, Jr.
                                                                             President
                                                                             Lee's Famous Recipes, Inc.

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§152 and 3571.

# EXHIBIT A

## INDEX OF FIRST DAY MOTIONS

| 1. | Motion for Entry of Order Authorizing Use of Cash Collateral |
|---|---|
| 2. | Motion for Order Authorizing Payment of Pre-Petition Wages, Payroll Taxes, Certain Employee Benefits, Related Expenses, and Other Compensation to Employees and Independent Contractors |
| 3. | Motion for Establishment of Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals |
| 4. | Motion of the Debtor for Approval of Notice Procedures |
| 5. | Motion for Additional Time to File Schedules and Statements of Financial Affairs |
| 6. | Motion for Order Shortening Notice and Expediting Hearing on First-Day Motions |
| 7. | Declaration of Charles L. Cooper, Jr. in Support of First Day Applications and Motions |