**IT IS ORDERED as set forth below:**

Date: July 19, 2011

_____
Robert E. Brizendine
U.S. Bankruptcy Court Judge

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEE'S FAMOUS RECIPES, INC., | ) | Case No. 11-68463-REB |
| | ) | |
| Debtor. | ) | |

**FINAL ORDER (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, AND
(B) GRANTING ADEQUATE PROTECTION PURSUANT
TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE**

This matter is before the Court on a final hearing (the "**Final Hearing**") pursuant to the *Interim Cash Collateral Order and Notice Scheduling Final Cash Collateral Hearing for July 18, 2011* [D.E. 22] (the "**Interim Order**"),[1] which granted on an interim basis the *Motion to Approve Use of Cash Collateral and Request for Emergency Hearing* [D.E. 6] (the "**Motion**") filed by Lee's Famous Recipes, Inc. ("**Debtor**") in the above-

---

[1]    Capitalized terms not defined in this Final Order shall have the meaning accorded to them in the Motion.

captioned Chapter 11 case (the "**Bankruptcy Case**"). In the Motion, Debtor sought entry of the Interim Order and this final order (the "**Final Order**"), authorizing Debtor:

(i) pursuant to Sections 361 and 363(c) and (e) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to use Cash Collateral (as defined below) of Coastal Bank and Trust, a division of Synovus Bank ("**Coastal**"); and

(ii) to provide adequate protection to Coastal and certain other parties that may claim an interest in Cash Collateral.

The Court held the Final Hearing on July 18, 2011, and upon all pleadings filed with the Court and the record at the Interim Hearing and the Final Hearing; and after due deliberation and consideration and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A. *Commencement of the Case.* On June 24, 2011, (the "**Petition Date**"), Debtor filed its petition under Chapter 11 of the Bankruptcy Code. Debtor continues to operate its business and manage its assets as a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

B. *Creditors Committee.* On or about July 13, 2011 the United States Trustee (the "**UST**") appointed a creditors' committee (the "**Committee**") in this case. As of the date of the Final Hearing, the Committee apparently had not retained counsel and did not appear at the Final Hearing.

C. *Jurisdiction and Venue.* This Court has subject matter jurisdiction over these proceedings, the parties, and property affected hereby under 28 U.S.C. § 1334. This proceeding is a core matter under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

D. *Notice.* Debtor served the Interim Order and the notice of the Final Hearing, *see* D.E. 25, by first class mail to: (i) counsel to Coastal; (ii) the Office of the UST; and (iii) the Debtor's top 20 unsecured creditors; and (iv) various other creditors and parties in interest. Such notice satisfies Bankruptcy Rule 4001(b).

E. *Prepetition Indebtedness and Security Therefor.* Subject to the rights of the Committee or any nondebtor party in interest as provided in Paragraph 5 below, Debtor acknowledges, agrees, and stipulates as follows:

**The Lee's Note**

1. Before the Petition Date, Debtor and Vanguard Bank & Trust Company n/k/a/ Coastal entered into a Loan Agreement, dated October 30, 2008 ("**the Lee's Loan Agreement**"), under which Debtor established the terms of its loan from Coastal.

2. In connection with the Lee's Loan Agreement, Debtor issued a Promissory Note, dated October 30, 2008 ("**the Lee's Note**"), in the principal amount of $5,350,000.00.

3. The Lee's Note is secured by: (i) the Collateral Assignment, dated October 30, 2008 ("**the Lee's Collateral Assignment**"), under which Debtor assigned to Coastal all of its right, title, and interest in and to certain promissory

notes set forth on Exhibit 1 thereto made payable to Debtor by certain licensees ("**the Lee's Assigned Notes**"); (ii) a pledge of Debtor's stock ("**the Lee's Pledge**") by Debtor's equity holders pursuant to the Stock Pledge Agreement, dated October 30, 2008 ("**the Lee's Pledge Agreement**"); and (iii) certain deeds of trust and deeds to secure debt on seven of Debtor's commercial properties located in Georgia ("**the Lee's Deeds**," together with the Lee's Assigned Notes and the Lee's Pledge, "**the Coastal Collateral**").

4. The Security Agreement, dated October 30, 2010 (the "**Security Agreement**") evidences Coastal's first priority secured claim in the Coastal Collateral and the proceeds thereof ("**Cash Collateral**").

5. The Security Agreement provides that it secures the Lee's Note and "all liabilities of Debtor to [Coastal] now existing or hereafter incurred, matured, or unmatured, direct or contingent." Security Agreement, § 1.

6. In addition to the Lee's Deeds, Coastal filed UCC-1 financing statements to perfect its security interest in the Coastal Collateral.

7. The outstanding principal balance on the Lee's Note is $866,852.00.[1]

---

[1] Pursuant to the Lee's Note, non-default interest accrues at seven percent (7%) per annum.

**The Mission Note**

8. Mission Partners Crestview, LLC, an affiliate of Debtor, issued a promissory note to Coastal ("**the Mission Note**" and, collectively with the Lee's Note, "**the Notes**").

9. The Mission Note has an outstanding principal balance of $772,993.64.

10. Debtor guaranteed the Mission Note.

11. The Security Agreement, which secures "all liabilities of Debtor to [Coastal] now existing or hereafter incurred, matured, or unmatured, direct or contingent" evidences Coastal's first priority secured claim in the Coastal Collateral and the Cash Collateral with respect to Debtor's guarantee of the Mission Note.

12. Debtor's obligation under its guarantee of the Mission Note is further evidenced by that certain Cross Collateralization and Cross-Default Agreement, dated December 22, 2010 (the "**Cross Collateralization Agreement**," together with the Lee's Loan Agreement, the Lee's Note, the Lee's Collateral Assignment, the Lee's Pledge Agreement, the Security Agreement, the Mission Note and any other documents relating to the loan, collectively, the "**Loan Documents**").

13. As of the Petition Date, Mission and Debtor owed Coastal approximately $1,639,845.64 pursuant to the Notes, exclusive of accrued interest and professional fees (the "Coastal **Prepetition Indebtedness**").[2]

14. The Security Agreement evidences Coastal a first priority secured claim in the Coastal Collateral and the Cash Collateral with respect to the Coastal Prepetition Indebtedness.

F.  *Other Alleged Security Interests:*  In addition to Coastal, certain other entities also might assert security interests in the Debtor's assets, including John Tsern ("Tsern"), Sysco Atlanta LLC and certain of its affiliates (collectively, "Sysco"), and Brauvin Net Capital LLC ("Brauvin"). Tsern, Sysco and Brauvin are collectively referred to herein as the "Other Lienholders," Coastal and the Other Lienholders are collectively referred to herein as the "Lienholders."). Nothing herein shall be deemed to be a stipulation or agreement by the Debtor to the extent, priority, validity or enforceability of any of the liens asserted by the Other Lienholders, but to the extent that any of the Other Lienholders have valid and enforceable liens on assets of the Debtor, the proceeds of any such collateral would constitute Cash Collateral of such Other Lienholder(s).

G.  *Necessity of Use of Cash Collateral.*  Permitting Debtor to use Cash Collateral will allow Debtor to continue to operate its businesses and preserve its business relationships with, franchisees, licensees, vendors, suppliers, and customers and to satisfy other working capital and operational, financial, and general corporate liquidity

---

[2]  The Loan Documents provide that Coastal is entitled to recover all the fees and costs it incurs in connection with the enforcement of the Loans.

needs as it advances the Bankruptcy Case and the sale of certain of its assets. Permitting Debtor to use Cash Collateral is also vital to preserving the estates' going concern value, which will enable Debtor to maximize recoveries for its creditors and all parties in interest. As such, Debtor has requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2).

H.    *Property of the Estate.*  Each item of Cash Collateral constitutes property of Debtor's bankruptcy estate.

I.    *Scope of Coastal's Consent.*  Coastal's consent is expressly limited to Debtor's use of Cash Collateral solely on the terms and conditions set forth in this Final Order. Nothing in this Final Order, including without limitation, any of the provisions regarding adequate protection, shall constitute or be deemed to constitute, a finding that Coastal is or will be adequately protected regarding any nonconsensual use of Cash Collateral or with respect to any motion or application for postpetition credit by Debtor under Section 364 of the Bankruptcy Code. Coastal has acted in good faith and at arm's length in negotiating, consenting to, and agreeing to the use of Cash Collateral as set forth in this Final Order.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    *Disposition.*  The Motion is granted as set forth in this Final Order. Any objections to the Motion that have not been withdrawn, waived, or settled are hereby denied and overruled.

2.    *Use of Cash Collateral.*  Subject to the terms and conditions of this Final Order, Debtor is authorized, pursuant to Section 363(c)(2) of the Bankruptcy Code, to use

Cash Collateral until the Termination Date (defined below) solely in accordance with the budget attached hereto as Exhibit "A" ("**Budget**"); provided, however, that Debtor's expenditures under the Budget cannot exceed 15% of any line item; and further provided that any unused amounts may be carried forward for use in subsequent weeks per line item for budgeted and approved expenditures. Through the Termination Date, Coastal and Debtor may, in their sole discretion, agree to increase cash disbursements in the Budget per line item (other than disbursements to Coastal), and upon written agreement by Coastal to modify the Budget, Debtor will be authorized to use Cash Collateral in such amount without further Court order. Notwithstanding any term herein to the contrary, Debtor shall not use Cash Collateral to pay (i) any expenses not set forth in the Budget; (ii) any obligations or debts arising before the Petition Date (unless otherwise ordered by the Court); or (iii) any fees or expenses of any party incurred in connection with the filing and prosecution of any challenge to the validity, amount, extent, perfection, priority or enforceability of Coastal's liens or the Loan Documents (the "**Prohibited Expenses**").

3. *Termination of Use of Cash Collateral.* Debtor's authority to use Cash Collateral, absent further Court order or Coastal's written consent, shall automatically expire upon the earlier of: (i) the final closing date of any sale of all of the Lee's Deeds under Section 363 of the Bankruptcy Code; (ii) the closing date of any sale of substantially all Debtor's assets, other than the Lee's Deeds, under Section 363 of the Bankruptcy Code; (iii) the conversion of the case to Chapter 7 or dismissal of the case; (iv) Debtor's use of Cash Collateral for any Prohibited Expenses; (v) the appointment of a trustee; (vi) the effective date of any plan under Section 1129, (vii) Debtor's failure to

comply with the Budget; (viii) Debtor's failure to make an Adequate Protection Payment (as defined below) on the date required, provided that Coastal shall be required to give written notice of such default via email to Debtor and Debtor's counsel with the opportunity to cure within three (3) business days; or (ix) Debtor's failure to comply with any provision of this Final Order (the occurrence of any of the foregoing shall be an "**Event of Default**"). Each Event of Default shall be known as the "**Termination Date.**"

4.  *Reporting Requirements.* Beginning on or before the twentieth (20th) day of each month following the entry of this Final Order, Debtor shall provide Coastal a written accounting showing (i) a variance report showing actual revenue, expenditures and receipts for each line item against the line item set forth in the Budget, and (ii) further information that Coastal reasonably requests upon reasonable notice which may include identifying, tracking, and accounting for the proceeds of any Cash Collateral created after the Petition Date, which shall also be subject to the Replacement Lien (defined herein).

5.  ***Investigation Rights. Debtor's stipulations contained in Paragraph E above shall be without prejudice to the right of a Committee or any other party in interest to seek to challenge the validity or enforceability of the Coastal's prepetition security interests in and liens on the Lee's Collateral or Cash Collateral, the Prepetition Indebtedness, and/or the Loan Documents. Such parties shall have until the later of (i) sixty (60) days from the entry of this Final Order or forty-five (45) days from the appointment of a Committee, but in no event later than October 16, 2011, unless Coastal, in its sole and absolute discretion, extends the investigation period ("the Challenge Period") to commence the appropriate action regarding Coastal's***

*security interests in and liens on the Lee's Collateral or Cash Collateral, the Prepetition Indebtedness, the Loan Documents, or any other claims against Coastal. If no such action is filed within the Challenge Period, (i) Debtor's stipulations in Paragraph E above shall become final and binding on all parties in interest (including any Committee and UST) and (ii) Coastal's security interests in and liens on the Lee's Collateral or Cash Collateral shall be valid, perfected, nonavoidable, and in full force and effect, not subject to any claims, counterclaims, setoffs, or defenses.*

6. *Adequate Protection Payments.* As adequate protection for Debtor's continued use of Cash Collateral expended pursuant to the Interim Order and this Final Order, Debtor shall make or have made the following payments to Coastal: (i) $36,000 on or before July 18, 2011; (ii) $36,000 on or before August 2, 2011; (iii) $36,000 on or before August 22, 2011; and (iv) $36,000 on or before the fifteenth (15th) day of each month commencing on September 15, 2011, and continuing until the Termination Date (the "**Adequate Protection Payments**").

7. *Replacement Liens.* As further adequate protection for Cash Collateral expended pursuant to this Final Order, each of the Lienholders is hereby granted, pursuant to 11 U.S.C. §§ 361(2), 363(e), postpetition security interests and liens ("**the Replacement Liens**") equal to any aggregate diminution in the value of any collateral of any such Lienholder (whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, use or disposition of Cash Collateral, or physical deterioration, consumption, use, shrinkage, disposition, or decline in market value). The Replacement Liens shall attach to all Debtor's property and assets, of any kind or nature

whatsoever, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, that were either subject to any of the Lienholders' prepetition liens or acquired because of Debtor's use and/or expenditure of Cash Collateral, in the same extent, validity and priority as existed as of the Petition Date. To the extent that any collateral or property obtained through the Debtor's use or expenditure of Cash Collateral is insufficient, then the property subject to the Replacement Liens shall include Debtor' unencumbered property and assets, of any kind or nature whatsoever, whether real or personal property, now owned or hereafter acquired, and all proceeds, rents, or profits thereof. Notwithstanding the above, the Replacement Liens shall not attach to the proceeds of claims or causes of action arising under sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (collectively, the "**Avoidance Actions**").

8. *Perfection of the Replacement Liens*. Subject to the Challenge Period with respect to Coastal and to any applicable statute of limitations with respect to a challenge of any liens asserted by the Other Lienholders, the Replacement Liens hereunder shall at all times be senior to Debtor's rights and any estate representative or any subsequent cases or proceedings under the Bankruptcy Code. The Replacement Liens granted to the Lienholders by this Final Order shall be perfected by operation of law upon execution and entry of this Final Order by the Court. The Lienholders are not required to take any action to validate or perfect such Replacement Liens. Notwithstanding the foregoing, if any of the Lienholders choose to file any documents, instruments, or otherwise confirm perfection of the Replacement Liens, they are authorized, notwithstanding 11 U.S.C. § 362, to effect such filings and recordations, and all such filings and recordations shall

be deemed to have been filed or recorded as of the Petition Date. If any of the Lienholders choose to file any documents, instruments, or otherwise confirm perfection of the Replacement Liens, Debtor shall cooperate and shall execute such additional documents as such Lienholders may reasonably require from time to time.

9. *507(b) Superpriority Claim.* To the extent that the Replacement Liens are inadequate to compensate any of the Lienholders for any diminution in value of the Collateral, the Lienholders shall also have a priority claim to the fullest extent permitted under 11 U.S.C. § 507(b) equal to the aggregate diminution in the value of the their collateral (the "**Superpriority Claim**") having priority over all costs and expenses of the kind allowed pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 546(c), and 1114 of the Bankruptcy Code or otherwise; provided, however, that such Superpriority Claim shall be subject to Debtor's obligations to pay fees to the United States Trustee.. The amount of such Superpriority Claim, if any, shall be established by the Court after a hearing on notice.

10. *Remedies.* Notwithstanding the automatic stay in 11 U.S.C. § 362 and without the necessity of any further order of the Court, if an Event of Default occurs Coastal may terminate its consent to allow Debtor to use all or any portion of Cash Collateral.

11. *Section 506 Waiver.* No costs between the Petition Date and the Termination Date shall be charged against any of the Lienholders or their collateral under 11 U.S.C. § 506(c) unless, before incurring such costs or expenses: (i) the party proposing to incur such costs or expense shall obtain the prior written consent of the

Lienholders allowing such charge to be imposed, or (ii) this Court enters an order allowing such charge to be imposed under 11 U.S.C. § 506(c).

12. . *No Third Party Rights.* Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

13. *Credit Bidding.* To the extent allowed by the Bankruptcy Code, any plan or motion seeking to sell substantially all the Collateral shall provide for and allow credit bidding by any of the Lienholders, whether under: (a) Section 363(k) or in the case of a sale under Section 363(b) or (b) a plan provision consistent with the language of Section 363(k), including, without limitation, Section 1129(b)(2)(a)(iii), provided, however, that the provision is subject to challenge by the Committee within the Challenge Period.

14. *No Waiver; Survival.* This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that any Lienholder has or may have to bring or be heard on any matter brought before this Court. The terms of this Final Order and any actions pursuant hereto, including, without limitation, the adequate protection granted hereby, shall survive the entry of any order: (i) confirming a plan of liquidation; (ii) dismissing this case; (iii) approving any sale under 11 U.S.C. § 363; (iv) converting this case to Chapter 7 of the Bankruptcy Code; and (v) withdrawing the reference of this case. Nothing herein shall or shall be deemed to constitute an admission by Coastal that its interests are adequately protected under Section 361 of the Bankruptcy Code.

15. This Final Order is hereby deemed effective immediately pursuant to Bankruptcy Rule 6004(h).

16. This Final Order constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable upon the entry thereof.

17. To the extent any provision of this Final Order conflicts with the Motion or the Interim Order, the Final Order shall control.

18. Debtor's attorney shall, within three business days of the date of entry of this Final Order, serve, by U.S. mail copies of this Final Interim Order upon: (i) parties having been given notice of the Interim Orders; (ii) any other party that has filed a request for special notice with this Court and served such request upon Debtors' counsel; (iii) counsel to Coastal; (iv) counsel for any Committee appointed for this Bankruptcy Case; (vi) all creditors who have recorded a UCC-1 financing statement on Debtor's personal property or a lien on any of Debtor's property; (vii) the United States Trustee; and (viii) all parties who will not otherwise receive electronic notice by the Court's CM/ECF system, and shall file a certificate of such service within three days thereafter.

**END OF DOCUMENT**

Prepared and presented by:
SCROGGINS & WILLIAMSON

 /s/ J. Hayden Kepner, Jr.
J. ROBERT WILLIAMSON
Georgia Bar No. 765214
J. HAYDEN KEPNER, JR.
Georgia Bar No. 416616
1500 Candler Building
127 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 893-3880
Counsel for the Debtor

**Lee's Famous Recipes, Inc**
Weekly Cash Budget  Week ending 7/1/11 through Week ending 01/06/2012           **EXHIBIT A**
27 weeks (7 four week periods)

| Week Ending | 7/1/11 | 7/8/11 | 7/15/11 | 7/22/11 | 7/29/11 | 8/5/11 | 8/12/11 | 8/19/11 |
|---|---|---|---|---|---|---|---|---|
| **BEGINNING CASH** | 54,200 | 74,359 | 145,304 | 121,178 | 200,928 | 197,752 | 160,997 | 97,321 |
| **SOURCES OF CASH:** | | | | | | | | |
| Franchise Royalties | - | - | 25,000 | 7,000 | - | - | 25,000 | 7,000 |
| Notes Payable - Licensees | 20,000 | 7,500 | | 75,000 | 20,000 | 7,500 | | 75,000 |
| Spice/Product Gross Income | 32,000 | 60,000 | 30,000 | 20,000 | 75,000 | 35,000 | 20,000 | 40,000 |
| Equipment | | 15,000 | | | | | | |
| Notes Payable - Other | | | | | | | | |
|     Arun | | 300 | | | | 300 | | |
|     Hodge | | 600 | | | | 600 | | |
|     Adsit | | 295 | | | | 295 | | |
| Annual Conference Registration | 25,000 | 5,000 | 5,000 | 10,000 | 18,000 | | | |
| Admin. Reimbursement | | 8,300 | | | | 8,300 | | |
| **TOTAL SOURCES OF CASH** | 77,000 | 96,995 | 60,000 | 112,000 | 113,000 | 51,995 | 45,000 | 122,000 |
| **TOTAL SOURCES OF CASH** | 77,000 | 96,995 | 60,000 | 112,000 | 113,000 | 51,995 | 45,000 | 122,000 |
| **USES OF CASH:** | | | | | | | | |
| **COST OF GOODS SOLD:** | | | | | | | | |
| Proprietary Spice and Product Costs | - | - | - | - | 23,500 | 13,000 | 57,000 | 23,500 |
| **TOTAL COST OF GOODS SOLD:** | - | - | - | - | 23,500 | 13,000 | 57,000 | 23,500 |
| **OPERATING EXPENSES:** | | | | | | | | |
| **SALARIES & PAYROLL** | | | | | | | | |
| Officers Net Salaries ($14,769 Gross bi-weekly) | 13,935 | | 13,935 | | 13,935 | | 13,935 | |
| Office and Field Salaries | 17,091 | | 17,091 | | 17,091 | | 17,091 | |
| Payroll Taxes | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 |
| SUTA/FUTA | - | - | - | | 3,800 | - | | |
| Ohio WC | | | | | 600 | | | |
| **Total Salary Expenses** | 31,026 | 8,000 | 31,026 | 8,000 | 35,426 | 8,000 | 31,026 | 8,000 |
| **Corporate Office - RENT EXPENSE** | 1,650 | | | | | 1,650 | | |
| **UTILITIES** | | | | | | | | |
| Telephone / Internet | | 800 | | | | | 800 | |
| Cell Phones | | | 400 | | | | | 400 |
| Quarterly Utility Adjustment | | | 600 | | | | | |
| **Total Utilities** | - | 800 | 1,000 | - | - | - | 800 | 400 |
| **INSURANCE & TAXES** | | | | | | | | |
| General | | | | 15,000 | | | 600 | |
| Group Medical | 8,000 | | | | | 8,000 | | |
| Personal Property Taxes ($1,000 due 3/2012) | - | | | | | | | |
| Real Property Taxes | - | | | | | | | |
| **Total Insurance & Taxes** | 8,000 | - | - | 15,000 | - | 8,000 | 600 | - |
| **PROFESSIONAL FEES** | | | | | | | | |
| IT Support Fees | | | | 2,000 | | | | |
| Debtor Professional Legal Services | | | | 30,000 | | - | | 30,000 |
| Professional Services ISS - Payroll/AP | 315 | - | | | 500 | | | - |
| **Total Professional Services** | 315 | - | - | 32,000 | 500 | - | - | 30,000 |
| **OTHER OPERATING EXPENSES** | | | | | | | | |
| Copier Lease | 700 | | | | | 700 | | |
| Field Travel Expense | 6,850 | 5,250 | 5,250 | 5,250 | 5,250 | 6,850 | 5,250 | 5,250 |
| Misc. Expenses | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Bank Service Charge | 150 | | | | | 400 | | |
| Equipment Lease | | | 4,250 | | | | | 4,250 |
| Computer Maintenance Expenses | 150 | | | | | 150 | | |
| Beverage Committee/Pepsi | | | | (45,000) | 45,000 | | | |
| Repair and Maintenance - Real Estate | | | | 6,000 | 6,000 | 6,000 | 3,000 | |
| Storage Unit | | 500 | 100 | | | | 500 | 100 |
| Store & Office Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Annual Conference Expenses | 7,500 | 11,000 | 5,000 | | | 7,500 | 10,000 | |
| Franchisee and Licensee Training Costs | | | | 10,000 | - | | | |
| Postage & Express Mailing | | | | 500 | | | | 500 |
| **Total Other Operating Expenses** | 15,850 | 17,250 | 15,100 | (22,750) | 56,750 | 22,100 | 19,250 | 10,600 |
| **TOTAL COS & OPERATING EXPENSES** | 56,841 | 26,050 | 47,126 | 32,250 | 116,176 | 52,750 | 108,676 | 72,500 |
| **COASTAL BANK & TRUST** | | | 37,000 | | | 36,000 | | - |
| **CASH FLOW FROM OPERATIONS** | 20,159 | 70,945 | (24,126) | 79,750 | (3,176) | (36,755) | (63,676) | 49,500 |
| **ENDING CASH** | 74,359 | 145,304 | 121,178 | 200,928 | 197,752 | 160,997 | 97,321 | 146,821 |

**Lee's Famous Recipes, Inc**
Weekly Cash Budget  Week ending 7/1/11 through Week ending
27 weeks (7 four week periods)

| Week Ending | 8/26/11 | 9/2/11 | 9/9/11 | 9/16/11 | 9/23/11 | 9/30/11 | 10/7/11 | 10/14/11 |
|---|---|---|---|---|---|---|---|---|
| BEGINNING CASH | 146,821 | 100,045 | 99,290 | 89,464 | 90,464 | 104,213 | 106,463 | 94,932 |
| **SOURCES OF CASH:** | | | | | | | | |
| Franchise Royalties | - | - | 25,000 | 7,000 | - | | 25,000 | 7,000 |
| Notes Payable - Licensees | 20,000 | 7,500 | | 75,000 | 20,000 | 7,500 | | 75,000 |
| Spice/Product Gross Income | 35,000 | 35,000 | 35,000 | 35,000 | 60,025 | 35,000 | 35,000 | 35,000 |
| Equipment | | | | | | | | |
| Notes Payable - Other | | | | | | | | |
|   Arun | | 300 | | | | | 300 | - |
|   Hodge | | 600 | | | | | 600 | - |
|   Adsit | | 295 | | | | | 295 | - |
| Annual Conference Registration | | | | | | | | - |
| Admin. Reimbursement | | 8,300 | | | | - | 8,300 | - |
| TOTAL SOURCES OF CASH | 55,000 | 51,995 | 60,000 | 117,000 | 80,025 | 42,500 | 69,495 | 117,000 |
| TOTAL SOURCES OF CASH | 55,000 | 51,995 | 60,000 | 117,000 | 80,025 | 42,500 | 69,495 | 117,000 |
| **USES OF CASH:** | | | | | | | | |
| **COST OF GOODS SOLD:** | | | | | | | | |
| Proprietary Spice and Product Costs | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 |
| TOTAL COST OF GOODS SOLD: | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 |
| **OPERATING EXPENSES:** | | | | | | | | |
| **SALARIES & PAYROLL** | | | | | | | | |
| Officers Net Salaries ($14,769 Gross bi-weekly) | 13,935 | | 13,935 | | 13,935 | | 13,935 | |
| Office and Field Salaries | 17,091 | | 17,091 | | 17,091 | | 17,091 | |
| Payroll Taxes | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 |
| SUTA/FUTA | - | | - | | - | - | | 3,800 |
| Ohio WC | - | | | | | - | | 600 |
| Total Salary Expenses | 31,026 | 8,000 | 31,026 | 8,000 | 31,026 | 8,000 | 31,026 | 12,400 |
| Corporate Office - RENT EXPENSE | | 1,650 | | | | | 1,650 | |
| **UTILITIES** | | | | | | | | |
| Telephone / Internet | | | 800 | | | | | 800 |
| Cell Phones | | | | 400 | | | | |
| Quarterly Utility Adjustment | | | | | | | | |
| Total Utilities | - | - | 800 | 400 | - | - | - | 800 |
| **INSURANCE & TAXES** | | | | | | | | |
| General | | | | | | | | |
| Group Medical | | 8,000 | | | | | 8,000 | |
| Personal Property Taxes ($1,000 due 3/2012) | | | | | | | | |
| Real Property Taxes | | | | | | | | |
| Total Insurance & Taxes | - | 8,000 | - | - | - | - | 8,000 | - |
| **PROFESSIONAL FEES** | | | | | | | | |
| IT Support Fees | 2,000 | | | | 2,000 | | | |
| Debtor Professional Legal Services | | - | | 30,000 | | | - | |
| Professional Services  ISS - Payroll/AP | 500 | | | - | 500 | | | |
| Total Professional Services | 2,500 | - | - | 30,000 | 2,500 | - | - | - |
| **OTHER OPERATING EXPENSES** | | | | | | | | |
| Copier Lease | | 700 | | | | | 700 | |
| Field Travel Expense | 5,250 | 6,850 | 5,250 | 5,250 | 5,250 | 5,250 | 6,850 | 5,250 |
| Misc. Expenses | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Bank Service Charge | | 400 | | | | | 400 | |
| Equipment Lease | | | | 4,250 | | | | |
| Computer Maintenance Expenses | | 150 | | | | | 150 | |
| Beverage Committee/Pepsi | | | | | | | | |
| Repair and Maintenance - Real Estate | | | 5,250 | | | | 5,250 | |
| Storage Unit | | | 500 | 100 | | | | 500 |
| Store & Office Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Annual Conference Expenses | | | | | | | | |
| Franchisee and Licensee Training Costs | | | | 5,000 | | | | |
| Postage & Express Mailing | | | | | | 500 | | |
| Total Other Operating Expenses | 5,750 | 8,600 | 11,500 | 15,100 | 6,250 | 5,750 | 13,850 | 6,250 |
| **TOTAL COS & OPERATING EXPENSES** | 65,776 | 52,750 | 69,826 | 80,000 | 66,276 | 40,250 | 81,026 | 45,950 |
| COASTAL BANK & TRUST | 36,000 | - | | 36,000 | | | | |
| CASH FLOW FROM OPERATIONS | (46,776) | (755) | (9,826) | 1,000 | 13,749 | 2,250 | (11,531) | 71,050 |
| ENDING CASH | 100,045 | 99,290 | 89,464 | 90,464 | 104,213 | 106,463 | 94,932 | 165,982 |

**Lee's Famous Recipes, Inc**
Weekly Cash Budget  Week ending 7/1/11 through Week ending
27 weeks (7 four week periods)

| Week Ending | 10/21/11 | 10/28/11 | 11/4/11 | 11/11/11 | 11/18/11 | 11/25/11 | 12/2/11 | 12/9/11 |
|---|---|---|---|---|---|---|---|---|
| **BEGINNING CASH** | 165,982 | 115,781 | 118,031 | 111,750 | 181,950 | 113,449 | 103,699 | 27,418 |
| **SOURCES OF CASH:** | | | | | | | | |
| Franchise Royalties | - | - | 25,000 | 7,000 | - | - | 25,000 | 7,000 |
| Notes Payable - Licensees | 20,000 | 7,500 | - | 75,000 | 20,000 | 7,500 | - | 75,000 |
| Spice/Product Gross Income | 67,425 | 35,000 | 35,000 | 35,000 | 46,025 | 35,000 | 35,000 | 35,000 |
| Equipment | | | | | | | | |
| Notes Payable - Other | | | | | | | | |
| Arun | | | 300 | | | | 300 | |
| Hodge | | | 600 | | | | 600 | |
| Adsit | | | 295 | | | | 295 | |
| Annual Conference Registration | | | | | | | | |
| Admin. Reimbursement | | | 8,300 | | | | 8,300 | |
| **TOTAL SOURCES OF CASH** | 87,425 | 42,500 | 69,495 | 117,000 | 66,025 | 42,500 | 69,495 | 117,000 |
| **TOTAL SOURCES OF CASH** | 87,425 | 42,500 | 69,495 | 117,000 | 66,025 | 42,500 | 69,495 | 117,000 |
| **USES OF CASH:** | | | | | | | | |
| **COST OF GOODS SOLD:** | | | | | | | | |
| Proprietary Spice and Product Costs | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 |
| **TOTAL COST OF GOODS SOLD:** | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 |
| **OPERATING EXPENSES:** | | | | | | | | |
| **SALARIES & PAYROLL** | | | | | | | | |
| Officers Net Salaries ($14,769 Gross bi-weekly) | 13,935 | | 13,935 | | 13,935 | | 13,935 | |
| Office and Field Salaries | 17,091 | | 17,091 | | 17,091 | | 17,091 | |
| Payroll Taxes | - | 8,000 | - | 8,000 | - | 8,000 | - | 8,000 |
| SUTA/FUTA | | | | | | | | |
| Ohio WC | | | | | | | | |
| **Total Salary Expenses** | 31,026 | 8,000 | 31,026 | 8,000 | 31,026 | 8,000 | 31,026 | 8,000 |
| **Corporate Office - RENT EXPENSE** | | | 1,650 | | | | 1,650 | |
| **UTILITIES** | | | | | | | | |
| Telephone / Internet | | | | 800 | | | | 800 |
| Cell Phones | 400 | | | | 400 | | | |
| Quarterly Utility Adjustment | 600 | | | | | | | |
| **Total Utilities** | 1,000 | - | - | 800 | 400 | - | - | 800 |
| **INSURANCE & TAXES** | | | | | | | | |
| General | | | | | | | | |
| Group Medical | | | 8,000 | | | | 8,000 | |
| Personal Property Taxes ($1,000 due 3/2012) | | | | | | | | |
| Real Property Taxes | | | | | | | 70,000 | |
| **Total Insurance & Taxes** | - | - | 8,000 | - | - | - | 78,000 | - |
| **PROFESSIONAL FEES** | | | | | | | | |
| IT Support Fees | 2,000 | | | | | 2,000 | | |
| Debtor Professional Legal Services | 30,000 | | - | | 30,000 | | - | |
| Professional Services  ISS - Payroll/AP | 500 | | | | 500 | | | |
| **Total Professional Services** | 32,500 | - | - | - | 30,500 | 2,000 | - | - |
| **OTHER OPERATING EXPENSES** | | | | | | | | |
| Copier Lease | | | 700 | | | | 700 | |
| Field Travel Expense | 5,250 | 5,250 | 6,850 | 5,250 | 5,250 | 5,250 | 6,850 | 5,250 |
| Misc. Expenses | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 |
| Bank Service Charge | | | 400 | | | | 400 | |
| Equipment Lease | 4,250 | | | | 4,250 | | | |
| Computer Maintenance Expenses | | | 150 | | | | 150 | |
| Beverage Committee/Pepsi | | | | | | | | |
| Repair and Maintenance - Real Estate | | | | 5,250 | | | | 5,250 |
| Storage Unit | 100 | | | 500 | 100 | | | 500 |
| Store & Office Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Annual Conference Expenses | | | | | | | | |
| Franchisee and Licensee Training Costs | | | | | | 9,500 | | |
| Postage & Express Mailing | 500 | | | | | 500 | | |
| **Total Other Operating Expenses** | 10,600 | 5,750 | 8,600 | 11,500 | 10,100 | 15,750 | 8,600 | 11,500 |
| **TOTAL COS & OPERATING EXPENSES** | 101,626 | 40,250 | 75,776 | 46,800 | 98,526 | 52,250 | 145,776 | 46,800 |
| **COASTAL BANK & TRUST** | 36,000 | | | | 36,000 | | | |
| **CASH FLOW FROM OPERATIONS** | (50,201) | 2,250 | (6,281) | 70,200 | (68,501) | (9,750) | (76,281) | 70,200 |
| **ENDING CASH** | 115,781 | 118,031 | 111,750 | 181,950 | 113,449 | 103,699 | 27,418 | 97,618 |

**Lee's Famous Recipes, Inc**
Weekly Cash Budget  Week ending 7/1/11 through Week ending (
27 weeks (7 four week periods)

| Week Ending | 12/16/11 | 12/23/11 | 12/30/11 | 1/6/12 | |
|---|---|---|---|---|---|
| **BEGINNING CASH** | 97,618 | 13,092 | 36,867 | 33,591 | |
| **SOURCES OF CASH:** | | | | | |
| Franchise Royalties | - | - | 25,000 | 7,000 | 224,000 |
| Notes Payable - Licensees | 20,000 | 7,500 | - | 75,000 | 717,500 |
| Spice/Product Gross Income | 35,000 | 59,025 | 35,000 | 35,000 | 1,104,500 |
| Equipment | | | | | 15,000 |
| Notes Payable - Other | | | | 300 | 300 |
| Arun | | | | 600 | 2,400 |
| Hodge | | | | 295 | 3,895 |
| Adsit | | | | | 1,770 |
| Annual Conference Registration | | | | - | 63,000 |
| Admin. Reimbursement | | | | 8,300 | 58,100 |
| **TOTAL SOURCES OF CASH** | 55,000 | 66,525 | 60,000 | 126,495 | 2,190,465 |
| **TOTAL SOURCES OF CASH** | 55,000 | 66,525 | 60,000 | 126,495 | 2,190,465 |
| **USES OF CASH:** | | | | | |
| **COST OF GOODS SOLD:** | | | | | |
| Proprietary Spice and Product Costs | 26,500 | 26,500 | 26,500 | 26,500 | 647,000 |
| **TOTAL COST OF GOODS SOLD:** | 26,500 | 26,500 | 26,500 | 26,500 | 647,000 |
| **OPERATING EXPENSES:** | | | | | |
| **SALARIES & PAYROLL** | | | | | |
| Officers Net Salaries ($14,769 Gross bi-weekly) | 13,935 | | 13,935 | | 195,090 |
| Office and Field Salaries | 17,091 | | 17,091 | | 239,274 |
| Payroll Taxes | - | 8,000 | - | 8,000 | 112,000 |
| SUTA/FUTA | | | | 3,800 | 11,400 |
| Ohio WC | | | | 600 | 1,800 |
| **Total Salary Expenses** | 31,026 | 8,000 | 31,026 | 12,400 | 559,564 |
| **Corporate Office - RENT EXPENSE** | | | | 1,650 | 11,550 |
| **UTILITIES** | | | | | |
| Telephone / Internet | | | | | 4,800 |
| Cell Phones | 400 | | | | 2,400 |
| Quarterly Utility Adjustment | | | | 600 | 1,800 |
| **Total Utilities** | 400 | - | - | 600 | 9,000 |
| **INSURANCE & TAXES** | | | | | |
| General | | | | | 15,600 |
| Group Medical | | | | 8,000 | 56,000 |
| Personal Property Taxes  ($1,000 due 3/2012) | | | | | - |
| Real Property Taxes | | | | | 70,000 |
| **Total Insurance & Taxes** | - | - | - | 8,000 | 141,600 |
| **PROFESSIONAL FEES** | | | | | |
| IT Support Fees | | 2,000 | | | 12,000 |
| Debtor Professional Legal Services | 30,000 | | | - | 180,000 |
| Professional Services  ISS - Payroll/AP | 500 | | | | 3,315 |
| **Total Professional Services** | 30,500 | 2,000 | - | - | 195,315 |
| **OTHER OPERATING EXPENSES** | | | | | |
| Copier Lease | | | | 700 | 4,900 |
| Field Travel Expense | 5,250 | 5,250 | 5,250 | 6,850 | 158,200 |
| Misc. Expenses | 400 | 400 | 400 | 400 | 11,200 |
| Bank Service Charge | | | | 400 | 2,550 |
| Equipment Lease | 4,250 | | | | 25,500 |
| Computer Maintenance Expenses | | | | 150 | 1,050 |
| Beverage Committee/Pepsi | | | | | - |
| Repair and Maintenance - Real Estate | | | | 5,250 | 47,250 |
| Storage Unit | 100 | | | | 3,600 |
| Store & Office Supplies | 100 | 100 | 100 | 100 | 2,800 |
| Annual Conference Expenses | | | | | 41,000 |
| Franchisee and Licensee Training Costs | 5,000 | | | | 29,500 |
| Postage & Express Mailing | | 500 | | | 3,000 |
| **Total Other Operating Expenses** | 15,100 | 6,250 | 5,750 | 13,850 | 330,550 |
| **TOTAL COS & OPERATING EXPENSES** | 103,526 | 42,750 | 63,276 | 63,000 | 1,894,579 |
| **COASTAL BANK & TRUST** | 36,000 | | | | 253,000 |
| **CASH FLOW FROM OPERATIONS** | (84,526) | 23,775 | (3,276) | 63,495 | 42,886 |
| **ENDING CASH** | 13,092 | 36,867 | 33,591 | 97,086 | 97,086 |

# DISTRIBUTION LIST

J. Hayden Kepner, Jr.
Scroggins & Williamson, P.C.
1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA  30303

James Morawetz
Office of the United States Trustee
362 Richard Russell Federal Building
75 Spring Street, SW
Atlanta, GA  30303

Darryl Laddin
Arnall Golden Gregory
171 Seventeenth Street, NW
Suite 2100
Atlanta, GA  30363

David Wender
Alston & Bird
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309