UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| LEE'S FAMOUS RECIPES, INC., | ) | Case No. 11-68463-REB |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | |

**DEBTOR'S REPLY TO (A) COASTAL BANK AND TRUST'S OBJECTION TO THE DEBTOR'S UNIVERSITY SALE MOTION AND (B) CUSTOMIZED DISTRIBUTION, LLC'S RESPONSE THERETO**

COMES NOW Lee's Famous Recipes, Inc., debtor and debtor-in-possession (the "**Debtor**"), by and through the undersigned counsel, and submits this reply to (a) Coastal Bank and Trust's Objection to the Debtor's University Sale Motion (the "**Coastal Objection**"), and (b) Customized Distribution, LLC's Response to Coastal Bank and Trust's Objection to the Debtor's University Sale Motion "(the "**CDI Response**"). In support thereof, the Debtor respectfully avers as follows:

**Background**

1. On June 24, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. On August 19, 2011, the Debtor filed a motion (the "**Sale Motion**") to sell a certain parcel of real property located at 599 University Ave., Atlanta, GA 30310 (the "**Property**").

3. The Property is subject to a first priority security interest of Coastal Bank and Trust ("**Coastal**") to secure a debt owed to Coastal *by the Debtor* which is currently estimated at approximately $1.1 million (the "**Coastal Claim**"). The Coastal Claim is also secured by certain

other assets owned by the Debtor, namely the Debtor's interest in certain notes with its licensees (the "**Licensee Notes**").

4. The Property is also subject to second priority security interest of Customized Distribution, LLC ("**CDI**") to secure a debt owed to CDI *by Famous Recipe Company Operations, LLC* ("**FRCO**"), an affiliate of the Debtor. Significantly, CDI's security interest in the Property was *not* granted to secure any debt owed by the Debtor to CDI. A copy of the applicable Deed to Secure Debt is attached hereto as Exhibit "A".

5. CDI does assert a claim against the Debtor in the approximate amount of $1.15 million (the "**CDI Claim**") based on a certain guaranty (the "**Guaranty**") issued by the Debtor (and its predecessor) to CDI to secure certain debts owed *by FRCO* to CDI. *See* Proof of Claim No. 2, filed on July 8, 2011. As noted above, however, the CDI Claim is not secured by a lien on the Property or on any other assets of the Debtor. Moreover, as discussed further below, the Debtor believes that the CDI Claim is invalid and will ultimately be disallowed in this Chapter 11 case.

6. Prior to the Petition Date, the Property was owned by a non-debtor affiliate of the Debtor. That non-debtor affiliate had attempted to sell the Property, but was thwarted from doing so by CDI who asserted that the Property could not be sold free and clear without the consent of CDI as a junior lienholder. The Property was ultimately conveyed to the Debtor just prior to the Petition Date in order to facilitate its sale.[1]

---

[1] There were seven properties altogether that were similarly situated (collectively the "**Properties**"). Each of the Properties was owned by individual non-debtor affiliates, and all of the Properties were subject to Coastal's senior lien and CDI's junior lien. Prior to the Petition Date, each of the non-debtor affiliates sought to sell their respective Properties, which collectively would almost certainly have generated sufficient funds to pay off the Coastal Claim in full and at least a substantial portion of the CDI Claim. CDI blocked the proposed sale of each of these Properties, and they were each conveyed to the Debtor prior to the Petition Date in order to facilitate their sale.

7. By the Motion, the Debtor seeks the entry of an order authorizing the Debtor to sell the Property for the gross purchase price of $100,000.

8. The Debtor would prefer that all of the net sale proceeds from the sale of the Property be distributed directly to Coastal in order to partially pay down the Coastal Claim. In the Debtor's business judgment, the Coastal Claim should be paid down as quickly as possible. Because the Coastal Claim is over-secured, it continues to accrue interest and attorneys' fees. Thus, it is in the Debtor's (and the other creditors') interest to pay off the Coastal Claim as quickly as possible, which would include conveying all of the net proceeds from the sale of the Property directly to Coastal.

9. Prior to filing the Sale Motion, however, the Debtor was informed that CDI would object to any distribution of the sale proceeds to Coastal on the ground that the Court should order "marshalling." That is, CDI asserts that because Coastal has a security interest in the Licensee Notes (in addition to its senior security interests in the properties), while CDI holds only a junior security interest in the properties, Coastal should be required to look to the Licensee Notes for the satisfaction of the Coastal Claim and the proceeds from the sale of the Properties should be allocated to CDI to pay off the CDI Claim. To this end, on August 22, 2011, CDI filed a complaint in this Chapter 11 case to compel marshalling.

10. Because of the marshalling argument, the Debtor suggested holding the sale proceeds in escrow pending a further order of the Court. Coastal, then, filed the Coastal Objection in which it objected to the sale of the Property unless the net sale proceeds were to be paid directly to Coastal. While the Debtor does not believe that the Coastal Objection has merit

to the extent it seeks to prohibit the sale of the Property,[2] the Debtor agrees with Coastal that the net sale proceeds should be paid directly to Coastal and hereby requests authority to pay the net sale proceeds to Coastal.

11.     Moreover, for the reasons set forth below, the Debtor does not believe that CDI's marshalling argument has any merit, and thus there is no basis for CDI's argument that the sale proceeds be held in escrow.

### Marshalling is Inapplicable in this Instance

12.     As a threshold matter, it is important to note that marshalling is an ***equitable doctrine***.  As the United States Supreme Court has stated, "it is well to remember that marshalling is not bottomed on the law of contracts or liens.  It is founded instead in equity, being ***designed to promote fair dealing and justice.***"  *Meyer v. United States*, 375 U.S. 233, 237 (1963) (Emphasis added.)  Moreover, marshalling should not be applied if it would prejudice the rights of third parties.  *Mulherin v. Porter*, 58 S.E. 60 (Ga. Ct. App. 1907) ("But this relief will not be given if it will prejudice the rights of third persons.").

13.     In the instant case, to require marshalling would be entirely ***unequitable***.  In the first place, it would reward CDI's wrongful conduct in having prevented the sale of the Properties over the months prior to the Debtor's bankruptcy while the Properties were deteriorating in value.  Second, it would elevate CDI to a status of a secured creditor when it knew at the time it obtained its junior liens on the Properties that it was completely underwater.[3]

---

[2] In the CDI Response, CDI sets out the reasons that the Property may be sold over the objection of Coastal.  Rather than repeat those arguments herein, the Debtor hereby adopts and incorporates by reference CDI's arguments in this regard.

[3] At the time CDI was granted its junior security interests in the Properties, the senior obligations to Coastal totaled several million dollars.  In the interim, Coastal's debt has been substantially reduced.  Moreover, as discussed more fully in the Coastal Objection, CDI had expressly waived any right to payment until the Coastal Claim had been satisfied in full.

And third, and most importantly, marshalling would substantially harm the innocent unsecured creditors of the Debtor by allocating to CDI over a million dollars from the Debtor's limited assets that would otherwise go to the Debtor's unsecured creditors. For all of these reasons, and those discussed below, marshalling should not be permitted.

14. Under Georgia law, where junior creditors have sought to invoke marshalling, courts have required them to prove several elements, including: (1) the existence of a common debtor to two secured creditors; (2) the existence of two separate funds or assets owned by the same debtor; (3) where a senior creditor has a right to satisfy his claim from both funds, while the junior creditor has a right to satisfy his claim only from a single fund; (4) an absence of impairment of the senior creditor's right to complete satisfaction; and (5) an absence of injustice to third persons.[4] *See, e.g In re Harrold's Hatchery & Poultry Farms, Inc.*, 17 B.R. 712, 715-16 (Bankr. M.D. Ga. 1982 (discussing the first three elements); *Moncrief Furnace Co. v. NW Atlanta Bank*, 19 S.E.2d 155, 157 (Ga. 1942) ("[A] junior creditor is not entitled to invoke the doctrine of equitable marshalling against a senior creditor, unless it be shown that its application . . . will not impair or hazard the securities of the senior creditor, or unreasonably delay their enforcement."); *Mulherin v. Porter*, 58 S.E. 60 (Ga. Ct. App. 1907) ("[Marshalling] will not be given if it will prejudice the rights of third persons."). Considering each of these elements in turn, the Debtor will show that marshalling is neither applicable nor necessary under an equitable balancing of the various interests involved here.

---

[4] Other bankruptcy courts in the 11th Circuit also recognize the junior lienor's need to prove these five elements. *See, e.g.*, In re Hale, 141 B.R. 225 (Bankr. N.D. Fla. 1992) ("Generally, for the doctrine to apply there must exist: (1) two or more creditors of the same debtor; (2) the funds or assets in the hands of and owned by such common debtor; (3) a legal right in one of the creditors to resort to more than one fund while the other creditors may resort to only one fund; (4) no impairment of the senior creditor's right to complete satisfaction; and (5) absence of injustice to third persons.").

15. **There was No Common Debtor With Respect to CDI's Security Interests.** As noted above, CDI's security interest in the Property was given only to secure the repayment of ***FRCO's obligation*** to CDI, not any obligation ***of the Debtor*** to CDI.  Coastal's security interests in the Property, on the other hand, secure its claim ***against the Debtor***.  Thus, the first element required under marshalling simply does not exist in that CDI's security interest in the Property was not given to secure the debts of ***a common debtor***.  The security interests in the Property were given to secure the debts ***of two different debtors*** (i.e., FRCO and the Debtor).  To the extent that CDI has any claim against the Debtor, that claim is based solely on the Guaranty and is, at best, simply an unsecured claim because CDI holds no security interest in any of the Debtor's property to secure any such claim.  Accordingly, marshalling is simply unavailable to CDI.

16. Even more importantly, however, the Debtor does not believe that CDI has a valid claim against Debtor whatsoever, whether under the Guaranty or otherwise.  The Debtor will shortly be filing an objection to the CDI Claim, but the gist of the Debtor's objection is that any obligation the Debtor may once have had to CDI under the Guaranty has previously been discharged through the doctrine of novation.

17. Pursuant to the Guaranty, the Debtor had guaranteed a particular obligation of FRCO to CDI as specified in a certain promissory note dated July 22, 2009 (the "**FRCO Note**"). On April 22, 2010, however, FRCO executed an amendment to the FRCO Note (the "**Amended FRCO Note**") which materially changed the terms of FRCO's obligation to CDI.  Among other things, the Amended FRCO Note extended the time by which FRCO was obligated to repay its debt to CDI.  The Debtor was not a party to either the FRCO Note or the Amended FRCO Note. Further, the Debtor never ratified nor consented to the changes in FRCO's obligations to CDI as

evidenced by the Amended Note.  Thus, as a matter of Georgia law, the Debtor was discharged from its obligations under the Guaranty.  *See* O.C.G.A. § 10-7-21 ("Any change in the nature or terms of a contract is called a novation; such novation, without consent of the surety, discharges him."); *see also Dunlap v. Citizens & Southern DeKalb Bank*, 134 Ga. App. 893, 895 (Ga. Ct. App. 1975) ("Any novation without the consent of the surety, or increase in risk, discharges the surety.").  Georgia courts have also explicitly recognized and interpreted UCC § 3-606 to hold that a "surety . . . can claim discharge under 3-606 when, without his consent . . . the creditor and debtor enter into a binding agreement to extend time for payment." *Kellet v. Stanley*, 153 Ga. App. 854, 856 (Ga. Ct. App. 1980) (internal quotation marks omitted).  Thus, CDI has no valid claim against the Debtor whatsoever.

18.    **The Assets to be Marshalled Were Not Owned by the Same Debtor at the Time the Obligations Arose or the Liens Were Created.**  The second element required for marshalling to be permitted is that the assets to be marshaled must be owned by the ***same debtor***.  In this instance, CDI is alleging that the assets to be marshalled are the Property and the Licensee Notes.  (As noted previously, both Coastal and CDI assert a lien in the Property, but only Coastal asserts a lien in the Licensee Notes.)  However, at the time the underlying obligations to CDI and Coastal arose and the security interests were given, the Property and the Licensee Notes were ***not*** owned by the same entity.  The Property was owned by a non-debtor affiliate; the Licensee Notes were owned by the Debtor.  Thus, marshalling of those assets was simply unavailable as a matter of law at the time CDI obtained a lien on the Property, a fact that CDI was fully aware of.

19.    It was only ***after*** CDI had thwarted the sale of the Property by the non-debtor affiliate (and well after the underlying obligations arose and the liens were granted) that the Property was conveyed to the Debtor.  Accordingly, CDI is essentially alleging that the transfer

of the Property to the Debtor on the eve of bankruptcy *created* a right to marshalling that CDI did not previously have. Not surprisingly, CDI provides no authority for the absurd proposition that such a right could be created simply by the transfer on an encumbered asset from one entity to another. Moreoever, from an equitable standpoint, this Court should not allow CDI, through its own wrongful acts, to manufacture its own, enhanced right to marshalling—especially where such a right would directly harm the interests of the existing unsecured creditors.

20. **It is Not the Senior Lienholder that is Seeking to Satisfy Its Debt from Forcing the Sale of the Property; It is the Debtor's Business Judgment to Sell the Property.** The doctrine of marshalling is designed to protect a junior creditor from actions *by a senior creditor*, not actions by a debtor. The doctrine arises "from the principle that a [senior creditor] who is entitled to satisfaction of his demand of either of two funds . . . shall not so exercise his *election* as to exclude a party who is entitled to resort to only one of the funds . . . ." *In re Harrold's*, 17 B.R. at 716 (quoting *Farmers & Merchant's Bank v. Gibson*, 7 B.R. 437, 439 (Bankr. N.D. Fla. 1980) (emphasis added)); *see also* Meyer, 375 U.S. at 237 ("Its purpose is to prevent the arbitrary action *of a senior lienor* from destroying the rights of junior lienor or a creditor having less security.") (emphasis added). In the instant case, however, the senior lienholder (i.e., Coastal) is not taking any action or exercising any remedies against any of the Debtor's assets. Rather, it is the *Debtor*, in the exercise of its sound business judgment, that is seeking to sell the Property. In contrast, the Debtor is *not* seeking to sell the Licensee Notes. Coastal is not forcing the Debtor to sell *any* assets and, due to the operation of the automatic stay, could not do so even if so wished. Rather, it is the Debtor that is seeking to sell the Property simply because it makes business sense to do so. Thus, because the doctrine of

marshalling is designed to protect a junior lienholder from the actions of a senior lien holder rather than by actions of the debtor, the doctrine is simply not applicable in this instance.

21. **Marshalling would Impair Senior Creditors' Rights.** This element has already been addressed in the Coastal Objection, and the Debtor incorporates Coastal's arguments in this regard by reference. The Debtor would point out, however, that it has no intention of selling the Licensee Notes. Therefore, forcing Coastal to wait an indefinite amount of time to receive satisfaction of the Coastal Debt from the Licensee Notes instead of having its debt immediately paid down upon the sale of the Property will constitute a real and material prejudice to Coastal. As discussed above, Georgia law will not allow a junior creditor to invoke marshalling "unless it be shown that its application . . . will not impair or hazard the securities of the senior creditor, or unreasonably delay their enforcement." *Moncrief Furnace,* 193 Ga. at 441; *see also In re Century Brass Products, Inc.* 95 B.R. 277, 279 (D. Conn. 1989) ("The doctrine of marshalling applies only to situations where the creditor who would be compelled to avoid satisfying its debt from certain funds would not be prejudiced.").

22. **Requiring Marshalling Would Materially Prejudice the Debtor's Unsecured Creditors.** Under Georgia law and general equitable principals, marshalling is inappropriate if it would work injustice upon third persons, including unsecured creditors. Courts have declined to invoke marshalling where to do so would "prejudice the rights of third persons." *Mulherin*, 58 S.E. at 61. Moreover, "bankruptcy courts are reluctant to permit secured creditors to enhance their positions to the detriment of unsecured creditors" via the marshalling doctrine. *In re Azabu,* 383 B.R. at 745. Allowing CDI to force marshalling in this instance would clearly prejudice the unsecured creditors in this Chapter 11 case who would end up with a substantially smaller pool

of assets by which to satisfy their claims. Thus, marshalling is clearly inappropriate in this instance.

  WHEREFORE, the Debtor respectfully requests the entry of an Order:

  a.  authorizing and approving the sale of the Property;

  b.  authorizing the Debtor to immediately pay the net sale proceeds from such sale to Coastal; and

  c.  granting such other and further relief as may be just and proper.

  This 9th day of September, 2011.

               Respectfully submitted,

               SCROGGINS & WILLIAMSON, P.C.

               /s/ J. Hayden Kepner, Jr.

| | |
|---|---|
| 1500 Candler Building | J. ROBERT WILLIAMSON |
| 127 Peachtree Street, NE | Georgia Bar No. 765214 |
| Atlanta, GA 30303 | J. HAYDEN KEPNER, JR. |
| (404) 893-3880 | Georgia Bar No. 416616 |
| rwilliamson@swlawfirm.com | Counsel for the Debtor |
| hkepner@swlawfirm.com | |

**CERTIFICATE OF SERVICE**

This is to certify that on this date I served a true and correct copy of the foregoing **Debtor's Reply to (a) Coastal Bank and Trust's Objection to the Debtor's University Sale Motion and (b) Customized Distribution, LLC'S Response Thereto** by causing the same to be deposited in the United States Mail with adequate postage affixed thereon and addressed to the following persons:

| | |
|---|---|
| James A. Morawetz<br>Office of the United States Trustee<br>75 Spring Street, SW<br>362 Richard Russell Building<br>Atlanta, GA  30303 | Henry Sewell<br>McKenna Long & Aldridge<br>303 Peachtree Street, NE<br>Suite 5300<br>Atlanta, GA  30308 |
| John Christy<br>Schreeder Wheeler & Flint<br>1100 Peachtree Street, NE<br>Suite 800<br>Atlanta, GA  30309 | Coastal Bank<br>c/o David Wender<br>Alston & Bird<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA  30309-3424 |

This 9th day of September, 2011.

SCROGGINS & WILLIAMSON, P.C.

| | |
|---|---|
| 1500 Candler Building<br>127 Peachtree Street, NE<br>Atlanta, GA 30303<br>(404) 893-3880<br>rwilliamson@swlawfirm.com<br>aray@swlawfirm.com | /s/ J. Hayden Kepner, Jr.<br>J. ROBERT WILLIAMSON<br>Georgia Bar No. 765214<br>J. HAYDEN KEPNER, JR.<br>Georgia Bar No. 416616<br>Counsel for the Debtor |